Filed 3/5/15

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| THE PEOPLE, | ) | |
| | ) | |
| Plaintiff and Respondent, | ) | |
| | ) | S211840 |
| v. | ) | |
| | ) | Ct.App. 4/1 D062693 |
| JAMES ALDEN LOPER, | ) | |
| | ) | San Diego County |
| Defendant and Appellant. | ) | Super. Ct. No. SCD225263 |
| _____ | ) | |

Penal Code section 1170, subdivision (e) (section 1170(e))[1] authorizes certain prison authorities to recommend that the superior court recall a previously imposed sentence because the prisoner is now terminally ill or medically incapacitated, permitting the resentencing of the prisoner to serve a new sentence outside the prison walls.  Under this procedure, sometimes called "compassionate release" (see *Martinez v. Board of Parole Hearings* (2010) 183 Cal.App.4th 578, 590), a question has arisen whether an inmate denied such release by the superior court may appeal that decision.  We conclude that when the proceeding is properly initiated by prison or parole authorities as required by law, the trial court's decision produces an appealable order that may be appealed by the prisoner. Accordingly, we reverse the Court of Appeal's decision, which reached a contrary conclusion.

---

[1] All statutory references are to the Penal Code unless otherwise stated.

FACTS

The San Diego County Grand Jury indicted defendant Loper in 2010 on several criminal counts related to his underpayment of both taxes and worker's compensation premiums in connection with his tree trimming business. On November 11, 2010, he pleaded guilty to one count of violating Insurance Code section 11880, subdivision (a) and admitted various enhancements; the remaining charges were dismissed. On February 4, 2011, the trial court sentenced him to six years in prison. On August 14, 2012, the Secretary of the California Department of Corrections and Rehabilitation (CDCR) recommended that defendant's sentence be recalled pursuant to section 1170(e) and that he be granted compassionate release due to his medical condition. The recommendation was accompanied by a letter from Dr. Ronelle Campbell, staff physician for the CDCR, who opined that defendant suffered from a variety of health ailments and that "[h]is life expectancy is short and possibly less than 6 months." On August 24, 2012, the trial court ordered the CDCR to provide it with an update on defendant's condition and an opinion from a medical doctor as to whether defendant was expected to die within six months, which is one of the statutory criteria for release. The court then continued the matter.

The trial court revisited the case on September 14, 2012. It had before it a letter from Dr. Kyle Sealey, the chief medical executive at the CDCR's Richard J. Donovan Correctional Facility, which stated that defendant "is an ill individual with disease processes that will continue to progress, despite treatment, leading to his eventual demise," but that "[h]is current status does not indicate for or against a prognosis of less than six months to live." The CDCR was not represented at the hearing but the People, represented by the San Diego County District Attorney's office, argued that because Dr. Sealey could not assert defendant would die within six months, defendant did not fall within the terms of section 1170(e). Counsel

appearing on behalf of defendant Loper presented the opinion of Dr. Campbell, who had recently retired from the CDCR and who last examined defendant on June 28, 2012. Counsel asserted to the court that Dr. Campbell told him "that you can't say to any medical certainty when someone is exactly going to die. He could die tomorrow. It's possible he could live beyond six months. But it's clear that his condition is inoperable. He doesn't have very long to live." Dr. Campbell was present in the courtroom and answered a few informal questions although she was not placed under oath. She did not dispute counsel's representation of her medical opinion. Despite the absence of formal testimony from Dr. Campbell, and there being no objection from the People, the trial court accepted counsel's recitation of Dr. Campbell's opinion but ultimately found an insufficient basis for compassionate release under section 1170(e). Noting that Dr. Sealey's letter said that defendant's "current status does not indicate for or against a prognosis of less than six months to live," the court opined that "the language of the statute is quite definitive in terms of the determination that the department physician needs to make." Accordingly, the court denied the CDCR's recommendation to recall defendant's sentence.

Defendant, but not the Secretary of the CDCR (the Secretary), appealed the trial court's decision. The Court of Appeal dismissed the appeal, finding the trial court's denial of the CDCR's recommendation for compassionate release was a nonappealable order. We thereafter granted review.

### DISCUSSION

The Right to Appeal

The right to appeal is statutory only, and a party may not appeal a trial court's judgment, order or ruling unless such is expressly made appealable by statute. (*Teal v. Superior Court* (2014) 60 Cal.4th 595, 598; *People v. Totari*

3

(2002) 28 Cal.4th 876, 881; *People v. Mazurette* (2001) 24 Cal.4th 789, 792.) Appeals by criminal defendants are governed by section 1237, and defendant contends subdivision (b) authorizes his appeal: "An appeal may be taken by the defendant: [¶] . . . [¶] *From any order made after judgment, affecting the substantial rights of the party*." (Italics added.) There being no dispute the trial court's order denying the recommendation to recall defendant's sentence pursuant to section 1170(e) was one made after defendant's original judgment, or that defendant is a "party," section 1237, subdivision (b) authorizes him to appeal if the trial court's denial of compassionate release constitutes (1) "any order" that (2) affects his "substantial rights."

Compassionate release was first authorized by statute in 1997 when the Legislature added new subdivision (e) to section 1170, permitting trial courts to recall the criminal sentences of terminally ill prisoners and resentence them to serve their sentences outside prison. (Stats. 1997, ch. 751, § 1, pp. 5071–5072.) The Legislature amended the law 10 years later to provide the same option for medically incapacitated prisoners. (Stats. 2007, ch. 740, § 1, pp. 6196–6197.) (A separate statute permits medically incapacitated prisoners to seek a medical parole directly from the Board of Parole Hearings (BPH) without intervention of the trial court. See § 3550, subd. (a).) Motivated in part by the Legislature's desire to save the prison system money (see *Martinez v. Board of Parole Hearings*, *supra*, 183 Cal.App.4th at pp. 590–592), section 1170(e) now provides in pertinent part that "if the secretary[2] or the Board of Parole Hearings or both determine that a

---

**2**      Read in context, reference to "the secretary" means the Secretary of the CDCR. A prior version of section 1170(e) provided, "the *Director* of Corrections or the Board of Prison Terms or both" could "recommend to the court that the prisoner's sentence be recalled." (As amended by Stats. 2004, ch. 747, § 1, pp. 5807, 5809, italics added.) This was later changed to read: "the *secretary* or

*(footnote continued on next page)*

4

prisoner satisfies the criteria set forth in paragraph (2), the secretary or the board may recommend to the court that the prisoner's sentence be recalled."  Section 1170(e)(2), in turn, provides that "[t]he court shall have the discretion to resentence or recall if the court finds that the facts described in subparagraphs (A) and (B) or subparagraphs (B) and (C) exist:

"(A) The prisoner is terminally ill with an incurable condition caused by an illness or disease that would produce death within six months, as determined by a physician employed by the department.

"(B) The conditions under which the prisoner would be released or receive treatment do not pose a threat to public safety.

"(C) The prisoner is permanently medically incapacitated with a medical condition that renders him or her permanently unable to perform activities of basic daily living, and results in the prisoner requiring 24-hour total care, including, but not limited to, coma, persistent vegetative state, brain death, ventilator-dependency, loss of control of muscular or neurological function, and that incapacitation did not exist at the time of the original sentencing."

---

*(footnote continued from previous page)*

the Board of Parole Hearings . . . ."  (Stats. 2007, ch. 740, § 1, pp. 6194, 6196, italics added.)
        As we have explained, "[f]ormerly, the administrative head of the department (then the Department of Corrections) was called the Director of Corrections.  In 2005, the Legislature abolished the office of the Director of Corrections and replaced it with the secretary.  (Pen. Code, §§ 5050, 5054.)  Some Penal Code provisions still use the term 'Director of Corrections,' but any such reference now 'refers to the Secretary of the Department of Corrections and Rehabilitation.'  (Pen. Code, § 5050.)"  (*In re Jenkins* (2010) 50 Cal.4th 1167, 1173, fn. 1.)

5

Section 1170(e) thus authorizes only two parties to seek a prisoner's compassionate release: the Secretary or the BPH (or both). Although "the prisoner or his or her family member or designee may independently request consideration for recall and resentencing by contacting the chief medical officer at the prison or the secretary" (§ 1170(e)(6)), nothing in the statutory scheme authorizes a prisoner (or his family) to initiate a proceeding in the trial court for compassionate release independently of prison or parole authorities. Unsurprisingly, the statutory scheme similarly contains no express provision permitting a prisoner to appeal an adverse decision.

The law thus presents a slight anomaly, for although a terminally ill or medically incapacitated prisoner is the party whose rights are most directly affected by a trial court's grant or denial of compassionate release, section 1170(e) does not specifically authorize the prisoner to seek recall of his sentence. Both the Court of Appeal below and respondent found this aspect of the law dispositive of defendant's right to appeal. Thus, the appellate court concluded that because "a defendant has no right to apply to the court for an order recalling the sentence on compassionate release grounds," his "substantial rights are not affected by the trial court's order denying recall of his sentence" and he thus "may not appeal from the order." Similarly, respondent, represented by the Attorney General, argues in this court that "because [Loper] did not have a right to request that the trial court recall his sentence and release him, the trial court's denial of the [CDCR's] recommendation could not affect his substantial rights."[3]

---

[3] Our cases do not provide a comprehensive interpretation of the term "substantial rights" as used in section 1237, subdivision (b), and we do not intend in this case to offer a generally applicable definition of that phrase. Given the circumstances here, however, the conclusion that defendant's substantial rights are at issue in the operation of the compassionate release statute is difficult to escape.

*(footnote continued on next page)*

Although respondent's argument, and the appellate court's holding, proceed on the assumption that one must be the moving party in the trial court to acquire the right to appeal an adverse ruling, no such universal rule exists. (See, e.g., *People v. Carmony* (2004) 33 Cal.4th 367, 376 ["the defendant's inability to move to dismiss [a strike conviction] under section 1385 should not . . . preclude him or her from raising the erroneous failure to do so on appeal"]; *People v. Gillispie* (1997) 60 Cal.App.4th 429, 433–434 [same].) To be sure, in the typical case the moving party who receives an adverse decision from the trial court is the one likely to appeal. Indeed, we recently explained that because a prisoner had standing to bring a motion to recall his sentence under section 1170.126 (pursuant to the Three Strikes Reform Act of 2012), denial of that motion affected his substantial rights and he could thus appeal the adverse ruling. (*Teal v. Superior Court*, *supra*, 60 Cal.4th at p. 601.) But section 1237, subdivision (b) is not tied to standing or the identity of the moving party. Instead, it permits a party to appeal "*any* order" (italics added) made after judgment if it affects that party's "substantial rights." When interpreting statutes, we give the law its plain, commonsense meaning (*In re Jennings* (2004) 34 Cal.4th 254, 263), giving effect

---

*(footnote continued from previous page)*

Although defendant has no independent right to initiate compassionate release proceedings in the trial court, the Secretary evaluated defendant's medical condition and made a recommendation for compassionate release on his behalf. By providing a mechanism for releasing eligible prisoners from custody, section 1170(e) implicates a prisoner's substantial interest in personal liberty. Moreover, although section 1170(e) authorizes the trial court to exercise discretion whether to release a prisoner for compassionate reasons, the statute also establishes clear eligibility criteria (§ 1170(e)(2)), suggesting that discretion is not unfettered when evidence is presented satisfying the statutory criteria. These factors lead us to conclude the trial court's ruling clearly affected defendant's substantial rights for purposes of section 1237, subdivision (b).

to the Legislature's intent in enacting the law (*People v Anderson* (2011) 51 Cal.4th 989, 1002). Here the plain meaning of section 1237's use of the phrase "any order" shows the Legislature did not intend to limit appealability to parties who had standing to bring the original motion.

Courts have recognized appeals from other than the moving party in a variety of circumstances. For example, in *People v. Herrera* (1982) 127 Cal.App.3d 590 (*Herrera*), the defendant appealed the denial of the motion by the former Board of Prison Terms to recall his sentence under a previous version of section 1170, subdivision (f), which at that time provided for disparate sentence review by the trial court.[4] As here, the state argued the trial court's denial of the board's motion was not appealable by the defendant but the *Herrera* court disagreed. After establishing the Board of Prison Terms properly brought the motion to recall the sentence, the *Herrera* court explained:

"The question here is: Assuming that the motion for recall was properly initiated by the Board, does the prisoner have the right to appeal from the denial of that motion *even though he could not have initiated the motion himself*?

---

[4] In August 1979, when the motion to recall the sentence was denied by the trial court in *Herrera* (*Herrera*, *supra*, 127 Cal.App.3d at p. 594), section 1170, subdivision (f) provided in pertinent part: "In all cases the Community Release Board [precursor to the former Board of Prison Terms and the present BPH] shall, not later than one year after the commencement of the term of imprisonment, review the sentence and shall by motion recommend that the court recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he had not been previously sentenced if the board determines the sentence is disparate." (As amended by Stats. 1978, ch. 579, § 29, pp. 1987, 1989.)

This subdivision was repealed in 1992, and its provisions rewritten and moved to section 1170, subdivision (d). (As amended by Stats. 1992, ch. 695, § 10, pp. 2975, 2977.)

"Section 1237, subdivision 2 [now subd. (b)] provides that a criminal defendant may appeal '[f]rom *any* order made after judgment, affecting the substantial rights of the party.' (Italics added.) <u>Application of this section is not confined to orders resulting from motions initiated by defendant; rather, by its own terms, the statute applies to 'any' order affecting the substantial rights of the party</u>.

"The 'right' which appellant is asserting is his 'right' to receive a sentence which is not disparate when compared to sentences received by other similarly situated convicts. Underlying this is appellant's right to liberty—and to suffer only that deprivation of liberty which his crimes warrant." (*People v. Herrera*, *supra*, 127 Cal.App.3d at p. 596, underscoring added.) Although this court later disapproved *Herrera* on another ground in *People v. Martin* (1986) 42 Cal.3d 437 (see *id.* at pp. 446 & 451, fn. 13), we specifically endorsed *Herrera*'s holding on appealability (*Martin*, *supra*, at p. 450).

Other cases have recognized a defendant's right to appeal in situations in which he was not, and could not be, the moving party. For example, in *People v. Sword* (1994) 29 Cal.App.4th 614 (*Sword*), the defendant was found not guilty of murder by reason of insanity and confined in a state hospital (§ 1026, subd. (a)). In such a case, the patient may later be released from confinement in three circumstances: (1) on a showing of restoration of sanity pursuant to section 1026.2; (2) on expiration of the maximum term of commitment pursuant to section 1026.5; or (3) upon placement on outpatient status pursuant to the provisions of section 1600 et seq. (§ 1026.1.) For a defendant to take advantage of the third option—placement on outpatient status—"the director of the state hospital or other treatment facility to which the person has been committed" must recommend to the committing court that the person is eligible for outpatient status. (§ 1604, subd. (a).)

9

In *Sword*, the medical director at Patton State Hospital "found that [the] defendant was no longer dangerous and recommended that [he] be placed on outpatient status pursuant to section 1603, subdivision (a)(1)." (*Sword*, *supra*, 29 Cal.App.4th at p. 620.) The committing court denied the recommendation and the defendant appealed. The appellate court found the appeal was proper under section 1237, subdivision (b) as an appeal from an order after judgment affecting the defendant's substantial rights, despite the fact the defendant was not himself authorized to seek an order releasing him to outpatient status. (*Sword*, *supra*, at p. 619, fn. 2; see *People v. Cross* (2005) 127 Cal.App.4th 63, 66, citing *Sword* with approval.)

Similarly, in *People v. Connor* (2004) 115 Cal.App.4th 669 (*Connor*), the defendant pleaded no contest to a sex offense on a dependent adult and the trial court sentenced him to probation with certain conditions. More than one year later, the San Jose Mercury News filed a petition to disclose the defendant's probation report pursuant to section 1203.05, subdivision (b). That statute provides in pertinent part: "Any report of the probation officer filed with the court, including any report arising out of a previous arrest of the person who is the subject of the report, may be inspected or copied only as follows: [¶] (a) By any person, from the date judgment is pronounced or probation granted or, in the case of a report arising out of a previous arrest, from the date the subsequent accusatory pleading is filed, to and including 60 days from the date judgment is pronounced or probation is granted, whichever is earlier. [¶] (b) By any person, at any time, by order of the court, upon filing a petition therefor by the person." The law thus provides a 60-day window in which probation reports are generally available to the public, but thereafter requires third parties to file a petition with the court seeking disclosure. The defendant himself or herself need never file a petition for disclosure because subdivision (f) of the same statute provides the probation report

10

may be inspected or copied "[b]y the subject of the report at any time." (§ 1203.05, subd. (f).)

The trial court granted the newspaper's petition and the defendant appealed. On appeal, the newspaper contended the trial court's order granting the petition for disclosure was not appealable by the defendant, but the appellate court rejected that argument. Finding that probation reports contain highly personal information about criminal offenders, the appellate court concluded that the terms and history of section 1203.05 showed the Legislature intended to maintain some degree of privacy over the information, that the defendant gained a degree of conditional confidentiality over the report when 60 days had elapsed, and thus the court's postjudgment ruling ordering the disclosure of the report to the newspaper affected the defendant's substantial rights within the meaning of section 1237, subdivision (b). (*Connor*, *supra*, 115 Cal.App.4th at pp. 677–678.) Accordingly, the defendant could appeal the adverse ruling despite being unauthorized himself to petition the court for disclosure.

The holdings of *Herrera*, *supra*, 127 Cal.App.3d 590 (disparate sentence review under § 1170, former subd. (f)), *Sword*, *supra*, 29 Cal.App.4th 614 (outpatient placement under § 1604, subd. (a)) and *Connor*, *supra*, 115 Cal.App.4th 669 (disclosure of probation report pursuant to § 1203.05), all demonstrate that a defendant may appeal an adverse decision on a postjudgment motion or petition if it affects his substantial rights, even if someone else brought the original motion.

Respondent relies on a different line of cases that, the Attorney General argues, together establish a rule that a party must have standing to bring a motion before being able to appeal an adverse decision on that motion. (See *People v. Pritchett* (1993) 20 Cal.App.4th 190; *People v. Chlad* (1992) 6 Cal.App.4th 1719; *People v. Gainer* (1982) 133 Cal.App.3d 636; *People v. Druschel* (1982) 132

Cal.App.3d 667; *People v. Niren* (1978) 76 Cal.App.3d 850.)  These cases all concern section 1170, subdivision (d) (section 1170(d)), which provides that after a trial court sentences a criminal defendant to prison, "the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the secretary or the Board of Parole Hearings, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence."  (§ 1170(d)(1).)  Section 1170(d) is superficially similar to section 1170(e), the section at issue in this case, in that both laws authorize a trial court to recall a prisoner's criminal sentence previously imposed; while section 1170(e) permits the trial court to recall a criminal sentence for medical reasons, section 1170(d) is a more general statute and "permits recall and resentencing for any otherwise lawful reason." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 460.)  Both statutes authorize the Secretary or the BPH to seek a sentence recall but neither law authorizes a prisoner personally to initiate a sentence recall proceeding in the trial court.  Unlike section 1170(e), however, section 1170(d)(1) also authorizes the trial court to recall the sentence on its own motion if done within 120 days of commitment.  (See *Dix*, *supra*, at p. 456.)

Despite the superficial similarity of these two statutes, these cases do not control this case because they arose in distinguishable circumstances.  In both *People v. Chlad*, *supra*, 6 Cal.App.4th 1719, and *People v. Gainer*, *supra*, 133 Cal.App.3d 636, the defendants requested resentencing by invoking section 1170(d) but did so more than 120 days after the date of commitment.  The trial court in each case properly denied the motion for lack of jurisdiction because section 1170(d) provides that the trial court loses jurisdiction to resentence on its own motion after 120 days has elapsed.  (See *People v. Roe* (1983) 148

12

Cal.App.3d 112, 118 ["[T]he 120-day limitation of section 1170, subdivision (d) is jurisdictional].") Because the trial courts in *Chlad* and *Gainer* had no jurisdiction to resentence on their own motion, their refusal to act on a defective defense motion for resentencing could not have affected any legal rights the defendants in those cases possessed, and the appellate courts properly dismissed the appeals.

*People v. Pritchett*, *supra*, 20 Cal.App.4th 190 (*Pritchett*), is also distinguishable but for a different reason. In that case, the defendant missed the deadline for filing a notice of appeal. (*Id.* at p. 192.) Then, 119 days after his sentence was imposed, he moved under section 1170(d) for a reduction in his sentence or, in the alternative, to have his sentence recalled and for the court to impose exactly the same term of imprisonment, believing the time for filing a notice of appeal would start anew and he could then appeal the sentence. (*Pritchett*, *supra*, at pp. 192–193.)

The trial court granted his second request but the appellate court held the court's order did not impose a "sentence" and, as a result, was not a " 'final judgment of conviction' " within the meaning of section 1237, subdivision (a). (*Pritchett*, *supra*, 20 Cal.App.4th at pp. 193–195). The *Pritchett* court explained: "The recall provisions of section 1170, subdivision (d) were not designed to permit a court to extend the time within which a defendant may file a notice of appeal. Instead, section 1170, subdivision (d) permits the sentencing court to recall a sentence only for reasons 'rationally related to lawful sentencing.' [Citations.] In effect, the section creates a limited exception to the common law rule that a trial court *loses jurisdiction* to resentence once the defendant commences his or her sentence. [Citations.] Here, the trial court did not recall defendant's sentence for a reason rationally related to lawful sentencing . . . . Instead, the court recalled the sentence for the sole purpose of permitting defendant to file a notice of appeal after he had failed to do so within the period

provided by law." (*Pritchett*, *supra*, at pp. 194–195.)  The trial court had "no 'jurisdiction' " to do so and so abused its discretion.  (*Id.* at p. 195.)

Because an appealable order must be validly issued, and because a sentencing order cannot be valid if the trial court lacks jurisdiction to issue it, the trial court's action in *Pritchett* was neither a "final judgment of conviction" nor an "order" within the meaning of section 1237.  In contrast to *Pritchett*, in this case the Secretary recommended that defendant's sentence be recalled for medical reasons, as authorized by statute, and the trial court thus had jurisdiction to act on that recommendation.  In any event, the *Pritchett* court was responding to "unique circumstances" not present here (*Pritchett*, *supra*, 20 Cal.App.4th at p. 194), and we find its reasoning inapplicable to the instant case.

Finally, in *People v. Druschel*, *supra*, 132 Cal.App.3d 667, and in *People v. Niren*, *supra*, 76 Cal.App.3d 850, the defendant moved to have his sentence recalled, and attempted to appeal when the trial court denied the motion.  The appellate court in each case dismissed the appeal on the ground the defendant lacked statutory authority, or "standing," to make the motion in the first place.  Although these cases provide facial support for respondent's view that the right to appeal depends on statutory authority to make the motion, *Druschel* and *Niren* are unpersuasive because their reasoning cannot be squared with that in *People v. Carmony*, *supra*, 33 Cal.4th 367.  *Carmony*, which involved a trial court's power to dismiss a strike pursuant to section 1385, explained:  "A defendant has no [statutory] right to make a motion [to dismiss a strike], and the trial court has no obligation to make a ruling, under section 1385.  But he or she does have the right to 'invite the court to exercise its power by an application to strike a count or allegation of an accusatory pleading, and the court must consider evidence offered by the defendant in support of his assertion that the dismissal would be in furtherance of justice.'  [Citation.]  And '[w]hen the balance falls clearly in favor

14

of the defendant, a trial court not only may *but should* exercise the powers granted to [it] by the Legislature and grant a dismissal in the interests of justice.' " (*Carmony*, *supra*, at p. 375.) Accordingly, "*the defendant's inability to move to dismiss under section 1385 should not . . . preclude him or her from raising the erroneous failure to do so on appeal.*" (*Carmony*, *supra*, at p. 376, italics added.) There being no apparent reason why this analysis would not apply to motions for resentencing under section 1170(d), we hereby disapprove *People v. Druschel, supra,* 132 Cal.App.3d 667, and *People v. Niren, supra,* 76 Cal.App.3d 850, to the extent they are inconsistent with *Carmony*, *supra*, at page 376.

In sum, we find the cases relied on by respondent and, to some extent, the Court of Appeal, distinguishable.

Although our conclusion that defendant may appeal is based on the plain meaning of section 1237, subdivision (b), respondent argues that permitting defendant to appeal the denial of compassionate release is contrary to the Legislature's purpose of expediting cases in which prisoners who meet the criteria for compassionate release can quickly be released from custody. Respondent suggests prisoners should instead seek writ relief because that avenue would more quickly resolve the case. We disagree: "A remedy by immediate direct appeal *is presumed to be adequate*, and a party seeking review by extraordinary writ bears the burden of demonstrating that appeal would not be an adequate remedy under the particular circumstances of that case." (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 113, italics added.) While not foreclosing the possibility of writ relief in all cases, we observe that prisoners remain free to seek expedited processing of their appeal on a showing of good cause, as defendant did in this case. (See Cal. Rules of Court, rule 8.68 ["For good cause and except as these rules provide otherwise, the Chief Justice or presiding justice may shorten the time to do any act required or permitted under these rules."]; *id*., rule 8.240 [a party may seek

15

"calendar preference," meaning "an expedited appeal schedule, which may include expedited briefing and preference in setting the date of oral argument"].)

## CONCLUSION

The trial court's denial of compassionate release was an order made after judgment that affected defendant's substantial rights. Accordingly, his appeal was authorized by section 1237, subdivision (b). Because the Court of Appeal improperly dismissed his appeal, we reverse that decision and remand the case to Division One of the Fourth District Court of Appeal for further proceedings consistent with this opinion.[5]

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

---

[5] See *In re Zeth S.* (2003) 31 Cal.4th 396, 405 ("It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' "); but see, *id.*, p. 413, fn. 11 (suggesting "particular circumstances may give rise to an exception to the general rule that postjudgment evidence is inadmissible").

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Loper

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 216 Cal.App.4th 969
**Rehearing Granted**


_____

**Opinion No.** S211840
**Date Filed:** March 5, 2015

_____

**Court:** Superior
**County:** San Diego
**Judge:** Laura H. Parsky


_____

**Counsel:**

Raymond M. DiGuiseppe, under appointment by the Supreme Court, for Defendant and Appellant.

Nora E. Wilson for Justice Now as Amicus Curiae on behalf of Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steven T. Oetting and Lise S. Jacobson, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Raymond M. DiGuiseppe
Post Office Box 10790
Southport, NC  28461
(910) 713-8804

Lise S. Jacobson
Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA  92101
(619) 645-2293