Filed 7/24/15  P. v. Jewell CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E062185 |
| v. | (Super.Ct.No. VCR3309) |
| DENNIS LLOYD JEWELL, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Dwight W. Moore, Judge.  Reversed and remanded with directions.

Ava R. Stralla, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Stephanie H. Chow, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

The Board of Parole Hearings (the Board) has twice recommended that the superior court recall defendant Dennis Lloyd Jewell's sentence and grant him a compassionate release under Penal Code[1] section 1170, subdivision (e). Both times, the Board concluded defendant was terminally ill with an incurable disease that will kill him within six months, and that the conditions of his release would not pose a threat to the public.

The trial court denied the Board's first recommendation because it concluded the record did not contain evidence that defendant would actually die within six months. The trial court also concluded that, because defendant's postrelease plan changed after the Board's recommendation, it could not conclude that releasing Jewell would pose no risk to the public. In our first opinion, we held the trial court applied too rigid a standard for determining whether defendant would die within six months, and concluded the record amply supported the Board's medical conclusion. (*People v. Jewell* (June 12, 2014, E059455) [nonpub. opn.].) However, because neither the Board nor the trial court had considered defendant's new postrelease plan, we affirmed the denial. We made clear that our affirmance was without prejudice to defendant submitting his new postrelease plan to the Board and, if the Board approved that plan and again recommended compassionate

---

[1] Unless otherwise indicated, all unspecified statutory references are to the Penal Code.

release, at that time, the trial court was to consider whether the conditions of defendant's proposed release would pose a risk to public safety.

After we issued our first opinion, defendant submitted a new postrelease plan to the Board. The Board subsequently approved that plan and again recommended a sentence recall and compassionate release for defendant. The trial court again denied the Board's recommendation, concluding there was a possibility defendant might pose a risk to public safety.

We again reverse.[2] Under the trial court's reasoning, any possibility that defendant might be a danger to the public, however remote, unlikely, and unsupported by the evidence, will defeat a recommended compassionate release. Because such an interpretation of section 1170, subdivision (e), would frustrate the intent of the Legislature, we must reject it.

---

[2] Defendant filed a petition for writ of habeas corpus alleging his trial attorney rendered ineffective assistance of counsel during at the hearing below (case No. E063089), which we ordered considered with this appeal. We will resolve that petition by separate order.

3

II.

## FACTS AND PROCEDURAL BACKGROUND[3]

The details of the underlying commitment offense are well known to the parties,

and need not be repeated in great detail. In an information filed in 1985, the People

alleged that Jewell killed a mother and her four children while driving a stolen vehicle

under the influence of alcohol. In 1987, a jury convicted Jewell of five counts of second

degree murder (Pen. Code, § 187) and one count of driving a stolen vehicle (Veh. Code,

§ 10851). The court sentenced Jewell to state prison for a total of 77 years to life.

(*People v. Jewell*, *supra*, E059455.)

A.      *Prior Proceedings*

Based on the recommendations of physicians employed by the Department of

Corrections and Rehabilitation (Department) and of defendant's personal physician, on

April 16, 2013, the Board approved a request for consideration of a sentence recall and

compassionate release for defendant. The Board concluded defendant was terminally ill

and would die within six months, "and the conditions under which [he] would be released

or receive treatment do not pose a threat to public safety." (*People v. Jewell*, *supra*,

E059455.) The postrelease plan approved by the Board called for defendant to live with

his sister and nephew in Arizona, and stated defendant's sister had already contacted a

_____

[3] By order dated March 23, 2015, we granted defendant's request to take judicial notice of the records in his first appeal (case No. E059455) and from a petition for writ of mandate (case No. E060031).

hospice provider for defendant and would assist defendant in applying for Social Security benefits. (*Ibid*.)

Two days before the trial court conducted its hearing on the Board's recommendation, an investigator for the Board contacted the court and informed it that defendant's sister could no longer care for defendant. (*People v. Jewell*, *supra*, E059455.) According to the investigator, Jewell indicated his desire to live with a longtime friend in Minnesota. The investigator did not provide any additional information about a new postrelease plan, but provided the court with the friend's telephone number. (*Ibid*.)

The trial court denied the Board's recommendation, concluding it lacked sufficient data to make a factual finding that defendant would in fact die within six months. (*People v. Jewell*, *supra*, E059455.) In the alternative, the court stated it could not make a finding that defendant would pose no risk to public safety. The court expressed its view that a prisoner who killed his victim while driving under the influence of alcohol poses a greater danger than a prisoner who killed after having a dispute with the victim, and that the Board did not address that concern. Moreover, the court noted the Board did know of the changed conditions under which Jewell would be released and treated when it made its recommendation. "He's just going to some lady's place in Minnesota, assuming he gets there. We don't know if she has alcohol in the home. You know, if he would have the ability to consume alcohol, he would have the ability to get behind the wheel of a motor vehicle." (*Ibid*.) The court denied a request to remand the matter back to the

Board to conduct further investigation into defendant's new postrelease plan, and denied the Board's recommendation without prejudice. (*Ibid*.)

In the first appeal,[4] we concluded that, when reviewing a recommendation by the Board for compassionate release under section 1170, subdivision (e)(2)(A), the superior court must determine whether the Board's determination of death within six months is supported by the reasonable clinical judgment of a Department physician, and not whether the evidence supports the conclusion that the prisoner will in fact die within six months. (*People v. Jewell*, *supra*, E059455.) Because the trial court applied too rigid a standard for reviewing the Board's finding that defendant had six months to live, and because we found the record before the court demonstrated that the Board's determination was supported by the reasonable medical judgment of two Department physicians, we concluded the trial court erred by ruling it lacked data to make a finding that defendant would die within six months. (*Ibid*.)

With respect to the trial court's finding under section 1170, subdivision (e)(2)(B), we concluded the trial court correctly ruled that the Board's recommendation was not supported by a current postrelease plan, and it correctly ruled that, on the record, it could not conclude that the conditions under which Jewell might be released and treated would pose no risk to public safety. (*People v. Jewell*, *supra*, E059455.) During oral argument before this court, defendant's attorney informed us that defendant's friend in Minnesota

---

[4] Defendant also challenged the order by petition for writ of mandate, which this court summarily denied in case No. E060031. The California Supreme Court denied defendant's petition for review. (*Jewell v. Superior Court* (Feb. 11, 2014, S215582).)

6

had prepared and signed a new proposed postrelease plan but had not yet submitted it to the Board. Because the new postrelease plan had not been considered by the Board when it made its recommendation and had not been presented to the trial court, we declined to consider it. However, we noted that nothing in section 1170, subdivision (e), would prevent Jewell or his attorney from presenting his new proposed postrelease plan to the Board for its consideration. (*People v. Jewell*, *supra*, E059455.) We also instructed that, if the Board approved of the new postrelease plan and again recommended Jewell's recall and release, at that time, the trial court must consider whether the new conditions of Jewell's release and treatment pose a risk to public safety. (*Ibid*.) Therefore, we affirmed the postjudgment order.[5]

B.    *Current Proceedings*

Sometime after we issued our remittitur, defendant's friend, Ms. Hudson, submitted a declaration to the Board. In her declaration, Hudson stated she was defendant's "long-term friend" and had corresponded with defendant and his siblings. Hudson stated she was serving as defendant's "outside contact person" for his compassionate release, and was "the initiator" of a release plan that called for defendant to live with her in Saint Cloud, Minnesota, until such time as defendant's worsening condition would require his admittance to a "Veteran's Administration" (VA) hospital and/or hospice facility. If

---

[5] The Supreme Court denied defendant's petition for review. (*People v. Jewell* (Aug. 20, 2014, S219878).)

7

defendant were to be released, Hudson stated she would travel to Stockton, California, to meet defendant, then travel with him by plane and bus back to Saint Cloud.

Hudson stated she had already contacted personnel at the VA hospital and the "Incarcerated Veterans Program" in Saint Cloud about obtaining medical benefits for defendant, and stated her "immediate priority" would be to assist defendant in applying for such benefits upon his release. With respect to defendant's medical care, Hudson stated she had experience providing end-of-life care to family members and had previously worked as a certified nursing assistant. Hudson stated she would ensure that defendant received care from appropriate medical personal as needed, and she would not attempt to care for him by herself.

In her declaration, Hudson addressed how she would assist defendant to remain sober. Hudson stated she had spent the past six and a half years working as a resident assistant at a halfway house for chemically dependent women. Her experience increased her "awareness of the detectable symptoms of someone actively abusing mind-altering substances," including alcohol. Hudson also stated she does not drink alcohol and "[t]here never is, and there never will be, any alcohol in my home." Moreover, Hudson stated she did not own or use a motor vehicle and that she would assist defendant in learning to use public transportation. Defendant informed Hudson that he does not plan on driving, and that he will use public transportation to get to and from the VA clinic or hospital.

Corrections officials and the warden of the prison hospital where defendant was being housed conducted a diagnostic study to evaluate defendant's "potential for success under sentence alternatives to State prison and the threat posed to the community should the defendant not fulfill that potential." The study reported that defendant was a 61-year-old "first-termer" with no "significant disciplinary history considering the length of time he has served"; that defendant suffered from increased fatigue and shortness of breath, that he intermittently coughs up blood, and that he is only able to walk short distances; that defendant's behavior in prison "does not reflect an ongoing, serious pattern of force, violence, assault, arson, or predatory behavior"; and that defendant had verifiable community support services for his physical and mental health needs. Although the study stated defendant's postrelease living arrangements had not been verified, it noted Hudson had written a letter of support explaining she would care for defendant.

In an August 12, 2014 memorandum to an investigator with the Board, an undersecretary for operations with the Department recommended that defendant's sentence be recalled. The undersecretary stated that, based on his "careful evaluation" of the diagnostic study, he concluded defendant "would not pose a threat to public safety, if he were released from prison." On September 3, 2014, the investigations division sent a memorandum to the Board stating Hudson was contacted by telephone and she verified defendant would live with her and she would care for him and assist him in obtaining additional medical care and services through the VA.

On September 16, 2014, the Board met to consider the recommendation for defendant's sentence recall, and again recommended to the superior court that defendant be granted a compassionate release. The Board found defendant was terminally ill and that "the conditions under which [defendant] would be released or receive treatment (to live with his friend in her home in Minnesota and receive care through community resources such as hospice and the Veterans' Administration) would not pose a threat to public safety."

The district attorney opposed the recommended sentence recall, arguing the Board's conclusion that defendant would pose no threat to public safety was "conclusory and not supported by one iota of evidence or analysis in the record." The district attorney argued that, if released, there was nothing to stop defendant from drinking alcohol and driving. The opposition also relied on letters defendant had written 17 years earlier, to show defendant's lack of insight into his crimes, and on letters from defendant's brother and the surviving victim both opposing defendant's release.

In a sentencing memorandum, defendant's attorney argued defendant was eligible for a compassionate release because defendant "ha[d] taken extraordinary steps toward rehabilitation" and was no longer a threat to public safety. In particular, counsel stated defendant "actively participated in an Alcoholics Anonymous program, abstained from the use of alcohol and drugs, assisted in the education of other inmates, and held himself out to other inmates as an example." Counsel also stated defendant's medical condition was precarious, that defendant slept 16 hours a day, was medicated with morphine, was

easily fatigued, and was ambulatory for short distances only. Based on this, counsel argued defendant "poses no cognizable threat to society."

At the hearing, defendant's attorney argued there was no evidence that defendant would pose a threat to public safety if he were released into Hudson's care, and that the prosecution's contrary suggestion was irrational. "I mean, what do we think that he's going to do upon getting back to Minnesota? He's going to somehow steal keys to a car and he's going to go out drinking, and then he's going to get into an accident and he's going to hurt somebody?" Counsel argued the prosecution's position was based solely on defendant's commitment offense, and that the prosecution failed to consider that defendant had been sober the entire time he has been in prison, he actively participates in Alcoholic Anonymous meetings, and has assisted other inmates to achieve sobriety.

The prosecutor argued defendant was sufficiently able to move around, he would be by himself in the evenings, and that the record before the trial court contained no evidence that defendant would not drive. Moreover, the prosecution argued defendant would pose a danger even if he did not drink alcohol because he is prescribed morphine and might drive under the influence of pain medication.

The trial court noted it was not bound by the Board's findings, and that it had discretion to determine whether defendant satisfied the criteria for release. Although the court expressed some skepticism that defendant was diagnosed with an incurable illness that would result in his death within six months, the court found the record supported the Board's finding under section 1170, subdivision (e)(2)(A).

11

With respect to the Board's finding under section 1170, subdivision (e)(2)(B), that the conditions of defendant's release and treatment would not pose a risk to public safety, the trial court agreed with the prosecutor that "the person who wrote that did nothing to justify that opinion." The court acknowledged the record contained facts from which "you can argue that his release would not pose a threat, mostly his declining medical state." Nonetheless, the court concluded defendant was capable of driving and it was unclear whether defendant's sobriety would continue in the community. The trial court expressly stated it was "not looking at even a probability" that defendant might be dangerous if released. Instead, the court concluded "the possibility that he could get out and get behind the wheel of a car, to me, means he's still a threat." The court stated it was "not willing to let this man out if there's the slightest chance that he [would] get behind the wheel of a car and hurt another living soul." Therefore, the court denied the Board's recommendation.

Defendant timely appealed.[6]

---

[6] In the first appeal, we concluded a defendant may appeal the denial of the Board's recommended compassionate release as a postjudgment order under section 1237, subdivision (b), and we denied the People's motion to dismiss. (*People v. Jewell*, *supra*, E059455.) Thereafter, the Supreme Court settled the issue and concluded such an order is an appealable postjudgment order. (*People v. Loper* (2015) 60 Cal.4th 1155, 1168 (*Loper*).)

12

III.

DISCUSSION

THE TRIAL COURT ERRED BY DENYING THE BOARD'S RECOMMENDATION BASED SOLELY ON THE POSSIBILITY THAT DEFENDANT MIGHT DRIVE WHILE UNDER THE INFLUENCE OF ALCOHOL OR PAIN MEDICATION

The parties dispute the appropriate standard of review we must apply. Defendant contends the trial court's findings of fact are subject to review for substantial evidence, and that, because the trial court's conclusion that defendant poses a threat to public safety is completely unsupported by substantial evidence, we should find the court abused its discretion. The People counter the trial court has discretion under section 1170, subdivision (e), to grant a prisoner compassionate release, and the decision not to grant compassionate release is reviewed under the deferential abuse of discretion standard.

The Board may recommend to the superior court that a prisoner's sentence be recalled and that the prisoner be granted a compassionate release if it determines: (1) "[t]he prisoner is terminally ill with an incurable condition caused by an illness or disease that would produce death within six months, as determined by a physician employed by the department" (§ 1170, subd. (e)(2)(A)); and (2) "[t]he conditions under which the prisoner would be released or receive treatment do not pose a threat to public safety" (§ 1170, subd. (e)(2)(B)). The Board must make findings regarding a prisoner's eligibility for a sentence recall and compassionate release, and its recommendation to the superior court must be supported by at least one medical evaluation of the prisoner, a postrelease plan, and the Board's eligibility findings. (§ 1170, subd. (e)(2), (7).)

13

The superior court must conduct a hearing within 10 days of receiving the Board's recommendation, and the hearing should, if possible, be conducted by the sentencing judge. (§ 1170, subd. (e)(3), (8).) "The court shall have the discretion to resentence or recall if the court finds that the facts described in subparagraphs (A) and (B) . . . exist," i.e., if it finds that the prisoner is suffering from a terminal illness that would result in death within six months, and that the prisoner's release will not pose a risk to public safety. (§ 1170, subd. (e)(2).) If the court grants the Board's recommended sentence recall, the prisoner must be released within 48 hours of the receipt of the court's order, unless the prisoner consents to a longer period. (§ 1170, subd. (e)(9).)

In *Martinez v. Board of Parole Hearings* (2010) 183 Cal.App.4th 578, 593-594, the appellate court held the standard of review of the Board's determination under section 1170, subdivision (e)(2)(B), regarding a prisoner's dangerousness, "is the same as that used when reviewing a decision by [the Board] to deny parole, i.e., 'whether "some evidence" supports the conclusion' of [the Board] that the prisoner does not come within the statutory criteria." (*Id*. at p. 593; see also *id*. at p. 582.) "This standard of review is 'highly deferential' to [the Board's] factfinding. [Citation.] It does not permit a court to second-guess [the Board's] factfinding. Our role is narrow. A court has the authority to do no more than 'ensure that [the Board's] decision reflects "an individualized consideration of the specified criteria" and is not "arbitrary and capricious,"' [citation], i.e., that [the Board's] decision is supported by '"some evidence"' viewed in the light most favorable to the decision [citation]." (*Id.* at pp. 593-594.)

The People contend the "some evidence" standard used in reviewing parole decisions is inapplicable to compassionate release hearings because the ultimate decision to recall a defendant's sentence and release him under section 1170, subdivision (e), is vested in the superior court and not in the Board, so the separation of powers concerns underlying the "some evidence" standard are not present. (See *In re Prather* (2010) 50 Cal.4th 238, 254-255.) However, the People's suggestion that the abuse of discretion standard is the correct standard of review cannot be entirely correct either. Section 1170, subdivision (e)(2), expressly grants the trial court "discretion" to recall a defendant's sentence, but "that discretion is not unfettered when evidence is presented satisfying the statutory criteria." (*Loper*, *supra*, 60 Cal.4th at p. 1161, fn. 3.) Moreover, the trial court's factual finding that a defendant is ineligible for a sentence recall is not subject to the deferential abuse of discretion standard. Even if the trial court is not required to give deference to the Board's findings of fact, the court's own factual findings must be supported by substantial evidence in the record. (See *People v. Robinson* (2010) 47 Cal.4th 1104, 1126 ["On appeal, we uphold any express or implied factual findings of the trial court that are supported by substantial evidence"].)

We need not decide whether the People are correct. In this case, the trial court's ultimate decision was not based on a determination that the Board's factual findings were unsupported by the record, and the court made no finding of fact that defendant would actually pose a threat to public safety if his sentence was recalled and he was released from prison. Instead, the court concluded the mere possibility, however unlikely, that defendant might pose a risk to public safety was sufficient reason to deny the Board's

recommendation. Therefore, the question on appeal is whether the trial court properly interpreted section 1170, subdivision (e)(2)(B), which is a question of law we review de novo. (*Goldman v. Lozano* (2010) 47 Cal.4th 1327, 1332; *Martinez v. Board of Parole Hearings*, *supra*, 183 Cal.App.4th at pp. 587-588.)

"'"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We begin with the plain language of the statute, affording the words of the provision their ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.' [Citations.] The plain meaning controls if there is no ambiguity in the statutory language. [Citation.] If, however, 'the statutory language may reasonably be given more than one interpretation, ""courts may consider various extrinsic aids, including the purpose of the statute, the evils to be remedied, the legislative history, public policy, and the statutory scheme encompassing the statute."'" [Citation.]" (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.)

"A court interpreting a statute 'should avoid an interpretation that leads to anomalous or absurd consequences.'" (*People v. McNamee* (2002) 96 Cal.App.4th 66, 72 [Fourth Dist., Div. Two], quoting *Horwich v. Superior Court* (1999) 21 Cal.4th 272, 280.) Moreover, "[w]e are obligated to select the construction that comports most closely with the apparent intent of the Legislature, to promote rather than defeat the statute's general purpose and to avoid an interpretation that would lead to absurd and unintended consequences. (*People v. King* (1993) 5 Cal.4th 59, 69.) We must not construe a statute

16

in a manner that renders its provisions essentially nugatory or ineffective, particularly when that interpretation would frustrate the underlying legislative purpose. (*People v. Pieters* (1991) 52 Cal.3d 894, 898-901.)" (*People v. Carter* (1996) 48 Cal.App.4th 1536, 1540 (*Carter*).)

Section 1170, subdivision (e)(2)(B), provides the trial court may, in its discretion, recall a prisoner's sentence if it concludes "[t]he conditions under which the prisoner would be released or receive treatment do not pose a threat to public safety."[7] On its face, the statute requires a finding that the prisoner will not pose a risk to public safety under the conditions of his release and treatment, meaning a finding of no current and future dangerousness. The plain language of the statute does not, however, answer the question addressed in the briefs, to wit, whether a trial court may deny a sentence recall based on the mere possibility that a prisoner will pose a risk to public safety. To answer that question, we must look to the legislative purpose behind the statute.

---

[7] The People (and the trial court) seem to take the position that, because the Board's finding that defendant would pose no risk to public safety was not supported by facts or analysis, prison officials did not adequately address that criteria. Regulations adopted by the Department require prison officials to consider various factors in determining whether a prisoner would pose a risk to public safety before recommending a sentence recall under Penal Code section 1170, subdivision (e). (Cal. Code Regs., tit. 15, §§ 3076.3, 3076.4, subd. (d).) We must presume prison officials satisfied their duty under Penal Code section 1170, subdivision (e), and the regulations. (Evid. Code, § 664; *Martinez v. Board of Parole Hearings*, *supra*, 183 Cal.App.4th at p. 593, fn. 6.) Moreover, we note that Penal Code section 1170, subdivision (e)(2), (6) and (7) require the Board to exercise independent judgment regarding release criteria, make findings, and submit those findings to the superior court; they do not require the Board to supply detailed analysis or documentation in support of those findings.

In *Martinez v. Board of Parole Hearings*, the court was asked to decide whether section 1170, subdivision (e), required the Board to recommend a sentence recall and compassionate release once it determined a prisoner met the criteria under subdivision (e)(2), or whether, as the Board argued in that case, the Board retained discretion to decline to recommend a sentence recall to an otherwise eligible prisoner. (*Martinez v. Board of Parole Hearings*, *supra*, 183 Cal.App.4th at pp. 588-589.) After reviewing the legislative history, the court concluded the dual purposes behind section 1170, subdivision (e), were to provide compassion to dying prisoners and to save money by relieving state prisons of the obligation to provide expensive end-of-life medical care. (*Id.* at pp. 590-592; see *id.* at p. 598 (conc. & dis. opn. of Sims, J.); accord, *Loper*, *supra*, 60 Cal.4th at p. 1160.) In light of that legislative intent, the court concluded it was required to interpret section 1170, subdivision (e)(1) "in a way that effectuates the provision's primary purpose of saving the state money." (*Martinez v. Board of Parole Hearings*, at p. 592.) Therefore, the court rejected the Board's suggested interpretation because it would thwart the Legislature's intent. (*Ibid.*)

We too must interpret section 1170, subdivision (e), in a manner which effectuates the primary purpose of the statute, and we must reject an interpretation which frustrates that purpose. (*Carter*, *supra*, 48 Cal.App.4th at p. 1540.) As noted, the trial court did not make a finding that defendant poses a threat to public safety. Rather, based on defendant's 1985 commitment offense, statements he made 17 years earlier, and the fact he is not entirely immobile and could theoretically get behind the wheel of a car, the court found the mere "possibility" and "slightest chance" that defendant might hurt

18

someone, even if the risk was not probable, was sufficient reason to deny the Board's recommendation.  Under that standard, virtually no terminally ill prisoner who is not completely physically and mentally incapacitated would qualify for a sentence recall under section 1170, subdivision (e), effectively thwarting the money saving purpose of the statute.

The majority of the court in *Martinez v. Board of Parole Hearings* concluded there was some evidence in the record that a paraplegic prisoner could be a danger if released. (*Martinez v. Board of Parole Hearings*, *supra*, 183 Cal.App.4th at p. 595.)  In his partial dissent, Justice Sims rejected the majority's position that a prisoner is ineligible if there is "any possibility, no matter how remote, that [the prisoner] would be a threat to public safety if released." (*Id*. at p. 599 (conc. & dis. opn. of Sims, J.).)  As Justice Sims noted, almost every state prisoner could theoretically pose some risk to the public if released. "The population eligible for recall of sentence under section 1170 consists of convicted felons who have been sentenced to state prison.  Nobody in their right mind would ever find that there is *no chance* whatsoever that a convicted felon—even a quadriplegic— would commit another crime if released." (*Ibid*.)  If the majority's test were correct, Justice Sims continued, "nobody [would] ever get out of prison," a result the Legislature did not intend. (*Ibid*.)  Therefore, Justice Sims concluded the appropriate test was whether there was a reasonable possibility the prisoner would pose a risk to public safety. (*Ibid*.)

19

We agree with Justice Sims that any possibility a prisoner might pose a risk to public safety, however remote, is an insufficient reason for the trial court to deny the Board's recommendation of a sentence recall under section 1170, subdivision (e). Rather, the trial court must determine whether it is probable a prisoner would reoffend and pose a risk to public safety. This interpretation of section 1170, subdivision (e)(2)(B), effectuates the primary fiscal purpose of the statute, whereas the interpretation adopted by the trial court would thwart that purpose. Moreover, this approach is consistent with our interpretation of section 1170, subdivision (e)(2)(A), in our first opinion. There, we rejected as too rigid the trial court's conclusion that the record did not establish defendant would in fact die within six months, and instead concluded the better interpretation was that the trial court had to determine whether the Board's recommendation was supported by the reasonable medical judgment of Department physicians. (*People v. Jewell*, *supra*, E059455.) Because we concluded the Board's recommendation was supported by the reasonable medical judgment that defendant would die within six months, we concluded the trial court erred. (*Ibid*.)

The People contend we should not read into the statute a reasonableness requirement, and cite to *Martinez v. Board of Parole Hearings*, where the majority declined "to read into the statute a test the Legislature could have included but did not."

(*Martinez v. Board of Parole Hearings*, *supra*, 183 Cal.App.4th at p. 593, fn. 6.)[8] But in rejecting the dissent's probability test, the majority ignored its own statement on the previous page that it was required to interpret the statute "in a way that effectuates the provision's primary purpose of saving the state money . . . ." (*Id*. at p. 592.) To repeat, we are obligated to interpret section 1170, subdivision (e)(2)(B), in a manner which effectuates the primary purpose of the statute, and we must reject an interpretation which frustrates that purpose. (*Carter*, *supra*, 48 Cal.App.4th at p. 1540.) Because our interpretation avoids the absurd result of a compassionate release statute under which virtually no prisoner could ever qualify for release, and it effectuates rather than thwarts the money saving purpose of the statute, we must adopt it.

Because the trial court applied the incorrect standard under section 1170, subdivision (e)(2)(B), we reverse the order denying the Board's recommendation.

---

[8] In addition, at oral argument, the People pointed to the medical parole statute as evidence that the Legislature did not intend section 1170, subdivision (e), to include a reasonableness requirement. Apparently in response to the decision in *Martinez v. Board of Parole Hearings*, the Legislature amended section 3550 to require the Board to determine whether parole of a permanently medically incapacitated prisoner would "pose a *reasonable* threat to public safety . . . ." (§ 3550, subd. (g), italics added; see *In re Martinez* (2012) 210 Cal.App.4th 800, 811-814.) Because the Legislature did not similarly amend section 1170, subdivision (e), the People contend we must assume the Legislature did not intend a reasonableness test to apply in compassionate release proceedings. We need not speculate what legislative intent, if any, we may derive from the amendment to the medical parole statute that would bear on this case. Instead, to avoid an absurd result and to effectuate the purpose of the statute, as we must, we read the language "pose a threat to public safety" (§ 1170, subd. (e)(2)(B)) to require the trial court to find some probability of danger before denying the Board's recommendation.

21

IV.

DISPOSITION

The postjudgment order is reversed.  On remand, the trial court is directed to consider whether it is probable the conditions of defendant's release and treatment would pose a risk to public safety.  The court may, in its discretion, permit the parties to submit additional documentary or testimonial evidence that was not before the court at the previous hearing.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
J.

We concur:

HOLLENHORST
Acting P. J.

KING
J.

22