Filed 8/29/25  P. v. Cooper CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>VICTOR WAYNE COOPER,<br><br>        Defendant and Appellant. | A172396<br><br>(Marin County<br>Super. Ct. No. SC010971A) |

Over 35 years ago, defendant Victor Wayne Cooper was sentenced to 60 years to life in prison after a jury convicted him of molesting a seven-year-old girl.  In 2024, the Department of Corrections and Rehabilitation (Department) requested compassionate release under Penal Code[1] section 1172.2 for Cooper, who is in his late sixties and has terminal colon cancer.  The trial court denied the request.

On appeal from the order denying compassionate release, Cooper argues that the trial court abused its discretion by finding that he posed an unreasonable risk of danger to public safety, overcoming the presumption in favor of his release.  (See § 1172.2, subd. (b).)  We affirm.

---

[1] All further statutory references are to the Penal Code.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

In 1988, Cooper repeatedly molested the victim, an acquaintance's daughter, and she contracted gonorrhea. The following year, he was convicted of four counts of lewd acts with a child under 14 years old under section 288, subdivision (a). Based on his two prior rape convictions, which resulted from his having forcible sex with two different women at knifepoint, the trial court sentenced him to consecutive terms of 15 years to life for each count under section 667.51, subdivision (d). This division affirmed the judgment. (*People v. Cooper* (1992) 7 Cal.App.4th 593, 595.)

In December 2024, Dr. Joseph Bick, M.D., the Department's Director of Health Care Services, sent a letter to the trial court stating that Cooper met the criteria for compassionate release under section 1172.2. The letter stated that Cooper had "stage IV sigmoid colon cancer with metastases to the . . . abdomen," which was inoperable and "not curable with chemotherapy." Cooper's doctors "deemed him to have an advanced illness with an end-of-life trajectory." The letter also noted that Cooper "require[d] a walker for short distances and a wheelchair for longer distances due to fatigue and shortness of breath."

Several documents were attached to Dr. Bick's letter, including a diagnostic study and evaluation report under section 1172.2 prepared by prison officials, the 1989 probation report, and a transcript of Cooper's February 2024 parole hearing at which the Board of Parole Hearings denied parole on the basis that Cooper "pose[d] an unreasonable risk to public safety." The section 1172.2 report summarized Cooper's prison disciplinary record, which included a 2017 incident of possessing child pornography. The

2

report indicated that if released, Cooper could be housed at a San Jacinto facility in compliance with section 290, pertaining to sex offenders.

The trial court held a hearing on the section 1172.2 request on December 16, 2024. The People opposed the request on the basis that Cooper was ineligible for release because he posed an unreasonable risk of "commit[ing] a super strike." The prosecutor summarized Cooper's criminal history, including the two rape convictions, and highlighted the recent denial of parole. The prosecutor also noted Cooper's possession of child pornography in prison, which demonstrated that it was "not a passing interest that got him in trouble years and years ago." Conceding for purposes of the hearing that Cooper had a qualifying medical condition, the prosecutor argued that he was nonetheless "still independent" and capable of committing "violent sexual assaults or assaults against children." Finally, the prosecutor had contacted the facility to which Cooper proposed to be released and learned that (1) its assistant director was a recently paroled sex offender and (2) it was "in a quasi-industrial district, . . . across the street from a sex shop." Thus, "the actual risk" Cooper posed was "not mitigated at all by his medical condition or . . . release plans."

Cooper's counsel responded that Cooper's medical condition, particularly his mobility issues, made it unlikely that he would commit any forcible sexual offenses if released. Counsel also took the position that the Department's finding that Cooper was eligible for release amounted to its opinion that he should be released. Noting that Cooper was estimated to have six months to live, counsel urged that it would be most compassionate "to allow him to die outside the prison walls."

The trial court denied the request for compassionate release. After finding that Cooper had "a serious advanced illness with an end-of-life

3

trajectory," the court concluded that the resulting presumption favoring release was overcome because he posed an unreasonable risk of danger to public safety. The court gave the following reasons for its ruling: (1) the Board of Parole Hearings had recently made the same finding about Cooper's risk to public safety in denying him parole; (2) his 2017 rules violation for possessing child pornography, which was "recent" in the context of his overall imprisonment, showed "his mind set continues to be focused on minors and child pornography"; (3) he was "debilitated, but not powerless," given his ability to "ambulate" with a walker or wheelchair and "feed[], bathe[], and dress[] independently"; (4) there was no evidence of "cognitive impairment," meaning "the mentality that caused his victims so much trauma and that caused him to re-offend over and over remain[ed]"; and (5) his release plan did not give the court "any assurance whatsoever that there would be any mitigation or any constraint" on future criminal conduct.

## II.
### DISCUSSION

Cooper claims the trial court abused its discretion in finding he posed an unreasonable risk of danger to public safety. We are not persuaded.

Under section 1172.2, if the Department determines that an inmate "has a serious and advanced illness with an end-of-life trajectory," such as "metastatic solid-tumor cancer," it must "recommend to the [trial] court that the [inmate's] sentence be recalled" for the person's immediate release. (§ 1172.2, subds. (a), (b)(1), (*l*).) If the court likewise finds that the inmate has a qualifying medical condition, this creates a "presumption favoring recall and resentencing . . . which may only be overcome if [the] court finds the [inmate] is an unreasonable risk of danger to public safety, as defined in subdivision (c) of Section 1170.18, based on the [inmate's] current physical and mental condition." (§ 1172.2, subd. (b).)

4

Section 1170.18, subdivision (c), defines the phrase "unreasonable risk of danger to public safety" to mean "an unreasonable risk that the [person] will commit a new violent felony" under section 667, subdivision (e)(2)(C)(iv). In turn, that provision lists various crimes known as " ' "super strikes," ' " which include lewd acts with a child under 14 years old and other " 'sexually violent offense[s].' " (*People v. Lewis* (2024) 101 Cal.App.5th 401, 409; § 667, subd. (e)(2)(C)(iv)(I)–(III).)  We review the determination that an inmate poses an unreasonable risk of danger to public safety for an abuse of discretion. (*Lewis*, at p. 409.)  " ' " 'We must indulge in every presumption to uphold a judgment, and it is [the appellant's] burden on appeal to affirmatively demonstrate error—it will not be presumed.' " ' " (*People v. Chubbuck* (2019) 43 Cal.App.5th 1, 12.)

Cooper begins by complaining about initial statements by the trial court when ruling.  Specifically, the court said, "[The Department] has simply recommended release on the basis of the illness that Mr. Cooper has.  They are not in the [request] making a finding or even a recommendation as I read it.  Nor is it their role to do so as to whether or not there's an unreasonable risk of danger to society."

According to Cooper, these statements were inaccurate because (1) a request for compassionate release *is* the Department's "recommendation" and (2) the Department *does* have a role in the unreasonable-risk determination because its medical reports address facts that are relevant to that issue.  But Cooper does not claim that these statements amounted to the trial court's applying the wrong legal standard or explain how they otherwise demonstrate the challenged order was erroneous.  To the contrary, the court accurately recognized that under section 1172.2, *it*, not the Department, ultimately decides whether release is warranted.  Even though the

5

Department does not recommend release unless it determines that an inmate has a qualifying medical condition, the court must also make such a finding before granting a request for release, and only the court is responsible for determining whether the inmate poses an unreasonable risk of danger. (See § 1172.2, subd. (b).) Thus, Cooper fails to show the court abused its discretion based on its comments about the Department's role.

Cooper also claims the trial court erred by focusing on his "past behavior" in determining that he posed an unreasonable risk of danger. Specifically, he argues that section 1172.2's "primarily fiscal purpose" means that compassionate release is "not a reward for good behavior," which "leaves no doubt that an inmate's pre-diagnosis behavior is of little, if any, relevance."

It is true that one of section 1172.2's primary purposes is "to save the prison system money" by avoiding high healthcare costs for terminally ill or elderly inmates, and we agree it is not meant to reward inmates for good behavior. (*People v. Loper* (2015) 60 Cal.4th 1155, 1160; *In re Brissette* (2025) 112 Cal.App.5th 147, 164–165 & fn. 6.) But it does not follow that a defendant's criminal history and prison record, including parole denials, are irrelevant to determining whether the defendant is too dangerous to release. Section 1172.2 authorizes a trial court to deny release if a defendant poses an unreasonable risk of danger to public safety, and Cooper does not explain why the court should disregard all but the defendant's most recent behavior in assessing the risk posed. Nor does he argue that insufficient evidence supported the court's finding here that, despite his illness, there was still an unreasonable risk that he would commit another violent sexual offense. While we agree with *Lewis* that a defendant's mere *capacity* to commit a super strike offense "has no tendency to prove" the level of *risk* that the

defendant will do so (*People v. Lewis*, *supra*, 101 Cal.App.5th at p. 409), the court here relied on far more than Cooper's physical ability to commit crimes in finding he posed the requisite danger to the public.  The court's consideration of Cooper's crimes and prison behavior to make that finding was entirely proper.  No abuse of discretion appears.

III.
DISPOSITION

The December 16, 2024 order denying compassionate release under Penal Code section 1172.2 is affirmed.

7

_____

Humes, P.J.



WE CONCUR:



_____

Banke, J.



_____

Smiley, J.



*People v. Cooper*  A172396