Filed 7/5/23

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. SETH CHRISTOPHER HILBURN, Defendant and Appellant. | D080175 (Super. Ct. No. SCD286360) |

APPEAL from a judgment of the Superior Court of San Diego County, Daniel F. Link, Judge. Affirmed.

Matthew Aaron Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve Oetting, Michael Dolida and Daniel Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

Seth Christopher Hilburn was charged with first degree burglary of an inhabited dwelling, first degree robbery, and carjacking, with allegations that he personally used a firearm in the commission of all three offenses. Before

trial, Hilburn entered into an agreement with the district attorney to plead guilty to the first degree robbery charge and the related firearm enhancement in exchange for the dismissal of the remaining charges and a maximum sentence of 13 years in prison. At the sentencing hearing, the court considered aggravating and mitigating factors and imposed an eight year sentence, consisting of the middle term of four years for both the first degree robbery conviction and the admission of the firearm enhancement allegation.

Hilburn appeals the sentence, asserting the court violated his Sixth Amendment right to a jury trial by imposing the middle, and not low terms, on the charges. Hilburn argues recent changes to the sentencing laws required the court to impose the low terms for the crimes he pleaded guilty to because the aggravating factors relied on by the court were not stipulated or proven to a jury beyond a reasonable doubt. Hilburn also asserts the court abused its discretion by imposing the middle terms because the aggravating factors did not outweigh those in mitigation.

As we shall explain, we reject Hilburn's constitutional argument and agree with the Attorney General that the imposition of the middle term did not implicate Hilburn's Sixth Amendment jury trial rights. In addition, we conclude the court's imposition of the middle terms was not an abuse of its discretion. Accordingly, we affirm the judgment of conviction.

FACTUAL AND PROCEDURAL BACKGROUND[1]

On October 16, 2020, the district attorney filed an amended felony complaint charging Hilburn with first degree burglary of an inhabited dwelling with a person other than an accomplice present (Pen. Code, §§ 459,

---

[1]    Because the case was resolved by plea agreement, the limited facts here are taken from the plea form and the transcript of the change of plea hearing.

2

460, subd. (a), and 667.5, subd. (c)(21);[2] count 1); first degree robbery of an inhabited dwelling (§§ 211 and 212.5, subd. (a); count 2); and carjacking (§ 215, subd. (a); count 3). The complaint also alleged Hilburn personally used a firearm within the meaning of sections 12022.53, subdivision (b), and 12022.5, subdivision (a), in the commission of all three offenses.

Subsequently, on October 8, 2021, Hilburn pleaded guilty to the robbery of an inhabited dwelling charge (count 2) and admitted the related section 12022.5, subdivision (a), firearm enhancement allegation in exchange for dismissal of the remaining charges and allegations and a sentencing lid of 13 years. On his plea form, and at the change of plea hearing, Hilburn admitted that on April 2, 2020, he used force and fear to take property from the victim while in an inhabited dwelling house. Hilburn also admitted that he personally used a firearm during the commission of the crime and that he intended to permanently deprive the victim of the use of his property.

At the sentencing hearing on February 15, 2022, Hilburn's counsel argued that under newly amended section 1170, subdivision (b)(6), Hilburn should be sentenced to the low terms for both the robbery and firearm enhancement because he was a youthful offender at the time the crimes were committed. The court agreed that Hilburn was a youthful offender under the new law and, therefore, the low terms were the presumptive sentences.

However, the court found the aggravating and mitigating factors supported the imposition of the middle terms in the interests of justice. Specifically, the court concluded several aggravating factors supported imposition of the middle terms: Hilburn's use of a firearm in the robbery; he chose a home that was occupied by its residents; and he was not a passive participant in the crime, but actively made verbal threats to the victim that

---

[2] Subsequent undesignated statutory references are to the Penal Code.

caused severe emotional injury. In addition, the court found that Hilburn's prior record of criminal conduct was an aggravant supporting the imposition of the middle term.[3]

The court sentenced Hilburn to the middle term of four years for the robbery conviction plus a consecutive four-year middle term for the firearm enhancement, for an aggregate sentence of eight years in state prison. Hilburn timely appealed the sentence.

DISCUSSION

As noted, Hilburn makes two primary arguments on appeal. First, he asserts the trial court violated his jury trial rights under the Sixth Amendment to the United States Constitution by basing the imposition of the middle term sentences on aggravating factors to which he did not stipulate, and which were not found true by a jury beyond a reasonable doubt. Second, Hilburn contends that, even if his constitutional rights were not violated, the court abused its sentencing discretion because the aggravating factors did not outweigh those in mitigation.

The Attorney General responds that this court must dismiss Hilburn's appeal because he failed to obtain a certificate of probable cause in the trial court. Alternatively, the Attorney General contends that under newly amended section 1170, subdivision (b), no jury finding or stipulation was required, and that the court properly weighed the mitigating and aggravating circumstances to determine that imposition of the lower terms was contrary to the interests of justice.

---

[3]     The probation report provided to the court before sentencing listed six prior offenses in Colorado for which Hilburn had served prison terms. The report also indicated that there was a warrant for his arrest in Colorado at the time of his arrest in this case.

4

# I

## *Certificate of Probable Cause*

"The right to appeal is statutory only, and a party may not appeal a trial court's judgment, order or ruling unless such is expressly made appealable by statute." (*People v. Loper* (2015) 60 Cal.4th 1155, 1159.) "In general, [however,] a defendant may appeal from a final judgment of conviction, unless otherwise limited by sections 1237.1 and 1237.5." (*People v. Maultsby* (2012) 53 Cal.4th 296, 298–299, citing § 1237 & Cal. Rules of Court, rule 8.304(b).)

"Section 1237.5 provides that an appeal may not be taken after a plea of guilty or no contest unless the defendant has filed a statement showing reasonable grounds for appeal and the trial court has executed and filed a certificate of probable cause. This requirement does not apply, however, if the appeal is based upon grounds that arose after entry of the plea and that do not affect the validity of the plea." (*People v. French* (2008) 43 Cal.4th 36, 43 (*French*).)

" 'In determining whether section 1237.5 applies to a challenge of a sentence imposed after a plea of guilty or no contest, courts must look to the substance of the appeal: "[T]he crucial issue is what the defendant is challenging, not the time or manner in which the challenge is made." [Citation.] Hence, the critical inquiry is whether a challenge to the sentence is *in substance* a challenge to the validity of the plea, thus rendering the appeal subject to the requirements of section 1237.5.' " (*French, supra*, 43 Cal.4th at p. 44.)

Relying on *People v. Shelton* (2006) 37 Cal.4th 759 (*Shelton*) and *People v. Cuevas* (2008) 44 Cal.4th 374 (*Cuevas*), the Attorney General argues that Hilburn's challenge is to the validity of the plea agreement itself. The

5

Attorney General asserts that Hilburn's argument is an attack on the 13-year sentencing lid the parties agreed was a permissible and authorized sentence, and thus a certificate of probable cause was required to appeal. Hilburn responds that his challenge is no different than the one made in *French, supra,* 43 Cal.4th 36, in which the California Supreme Court determined no certificate was required for the defendant's assertion that imposition of the upper term—although, like here, within the terms of the plea agreement's sentencing lid—violated his jury trial rights. We agree.

In *Shelton*, the California Supreme Court held "that a defendant's claim—that the sentence imposed by the trial court, which was within the agreed-upon maximum term, violated the multiple punishment prohibition of section 654—constituted an attack upon the validity of the plea and required a certificate of probable cause." (*French, supra*, 43 Cal.4th at p. 44.) "The defendant in *Shelton* pleaded guilty to two of the charged counts and agreed to a maximum sentence of three years eight months in exchange for dismissal of three other counts, reserving the right to argue for a sentence lower than the maximum but not reserving the right to argue that the agreed-upon maximum was an unauthorized sentence. The trial court sentenced the defendant to the maximum term of three years eight months, imposing the upper term on one count and a consecutive term on the other count. In challenging his sentence pursuant to section 654, the defendant argued that the trial court lacked authority to impose the agreed-upon maximum term." (*French,* at p. 44.)

*Shelton* "explained that 'inclusion of a sentence lid [in a plea agreement] implies a mutual understanding and agreement that the trial court has authority to impose the specified maximum sentence and preserves

6

only the defendant's right to urge that the trial court should or must exercise its discretion in favor of a shorter term." (*French, supra*, 43 Cal.4th at p. 44.) Accordingly, the court held that the defendant' s "challenge to the trial court's authority to impose the lid sentence [based on section 654 wa]s a challenge to the validity of the plea requiring a certificate of probable cause.'" (*French,* at p. 44.)

Although the defendant in *Shelton* had the right to argue for a lesser sentence, the bargain did not contemplate that he could challenge the court's authority to impose a sentence within the sentencing lid based on section 654. "This understanding of the provision [was] reinforced by the prosecutor's remarks at the sentencing hearing that he did not know defendant intended to raise a challenge to the court's sentencing authority under ... section 654, that the sentence lid of three years and eight months had been a term of the bargain, and that other counts could have been chosen. The implication of those remarks was that the prosecutor did not understand or believe that defendant had reserved a right to argue that the trial court lacked authority to impose the specified maximum sentence of three years and eight months." (*Shelton, supra*, 37 Cal.4th at pp. 768–769.)

In *Cuevas*, the court considered a similar challenge based on the multiple punishment prohibition of section 654, but where the defendant's plea agreement did not contain a sentencing lid. The defendant argued that because there was no lid, such a challenge did not attack the validity of the plea agreement. (*Cuevas, supra*, 44 Cal.4th at p. 377.) The court disagreed, concluding that the maximum possible sentence of 37 years and eight months on the charges to which the defendant pled operated like a sentencing lid. (*Id*. at p. 384.) The court held, "[c]ontrary to defendant's contention, the presence or absence of a sentence lid does not dictate the result here. For

7

purposes of the certificate of probable cause requirement, the critical question is whether defendant's section 654 challenge to his sentence is in substance a challenge to the validity of his plea." (*Cuevas,* at p. 381.) The court concluded the plea agreement did not reserve the challenge "because the maximum possible sentence defendant faced was 'part and parcel of the plea agreement he negotiated with the People.'" (*Ibid.*)

In contrast to *Shelton* and *Cuevas*, *French* held that a challenge to the imposition of an upper term sentence based on the defendant's Sixth Amendment jury trial rights did not require a certificate of probable cause. The defendant in *French* was charged with 12 counts of lewd and lascivious conduct with a child involving three victims, which was punishable by a triad of prison terms of three, six, or eight years. (§ 288, subd. (a).) The information also alleged that the defendant's offenses fell "within the meaning of section 667.61, subdivisions (b) and (e), an allegation which, if found true, would increase the punishment for each offense to a term of imprisonment of 15 years to life." (*French, supra*, 43 Cal.4th at pp. 41–42.) The maximum sentence for the charges was 180 years to life in prison.

The defendant pleaded no contest to six of the counts under a plea "agreement whereby he would receive a sentence of no more than 18 years in prison and the remaining six counts and the section 667.61 allegation would be dismissed." (*French, supra*, 43 Cal.4th at p. 42.) At the sentencing hearing, the trial court imposed the upper term sentence on count 1, and one-third of the six-year midterm on each of the other five counts, all to be served consecutively for a total term of 18 years. (*Id.* at p. 43.) The court stated it selected the upper term because the defendant had taken advantage of a position of trust and confidence to commit the crimes, an aggravating factor under the California Rules of Court, and imposed consecutive terms because

8

the crimes were committed on different occasions or at separate locations. (*Ibid*.)  The defendant challenged the sentence on appeal, arguing that the court's imposition of the upper term violated his Sixth Amendment right to a jury trial as established in *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*).  (*French,* at p. 40.)

The *French* court distinguished *Shelton*, and the line of authority leading to it, based on the fact that the defendant's argument did "not constitute an attack upon the validity of the plea agreement."  (*French, supra*, 43 Cal.4th at p. 45.)  Rather, the defendant's appeal " 'assert[ed] only that errors occurred in the [subsequent] adversary hearings conducted by the trial court for the purpose of determining the degree of the crime and the penalty to be imposed.' "  (*Ibid*.)  Like here, those proceedings were contemplated by the plea agreement, which allowed the defendant to argue for a lower term sentence.

*French* held that "[i]n contrast to a case in which the maximum term under the plea agreement would be unlawful under section 654, the Sixth Amendment would not render an upper term unlawful for defendant's crimes under all circumstances.  Whether an upper term sentence was permissible for defendant's offenses depended upon whether aggravating factors were established at the sentencing hearing, and not upon the facts of the offenses themselves.  Even without a jury trial on aggravating circumstances, the upper term would have been authorized if the prosecution had established an aggravating factor ... based upon defendant's prior convictions or upon his admissions. [Citation.]  Defendant's claim is that the upper term was not authorized because the prosecution failed to establish an aggravating circumstance at the sentencing hearing in the manner required by the Sixth

9

Amendment. Such a claim does not affect the validity of the plea agreement." (*French, supra,* 43 Cal.4th at p. 45.)

We see no difference between Hilburn's Sixth Amendment argument and that advanced by the defendant in *French*. Like French, Hilburn entered a plea agreement with a sentencing lid. Like French, Hilburn argues that the court violated his jury trial rights and abused the sentencing discretion given it by the plea agreement by imposing the middle term based on aggravating factors that were not admitted or found true by a jury beyond a reasonable doubt. Hilburn's challenge is to "the exercise of individualized sentencing discretion within an agreed maximum sentence" and that "agreement, by its nature, contemplate[d] that the court [would] choose from among a range of permissible sentences within the maximum." (*People v. Buttram* (2003) 30 Cal.4th 773, 790–791.) Therefore, abuse of that "discretionary sentencing authority [is] reviewable on appeal" and does "not constitute an attack on the validity of the plea, for which a certificate is necessary." (*Id.* at p. 791.)

## II

### *Apprendi Error*

### A

### *Penal Code Section 1170*

"Effective January 1, 2022, our determinate sentencing law [(DSL)], section 1170, was amended in several fundamental ways. (See Sen. Bill No. 567 (2020–2021 Reg. Sess.); Stats. 2021, ch. 731, § 1.3; Assem. Bill No. 124 (2020–2021 Reg. Sess.); Stats. 2021, ch. 695, § 5.)" (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.) Senate Bill No. 567 amended section 1170, subdivision (b), to authorize determinate sentences above the middle term "only when there are circumstances in aggravation of the crime that

10

justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) In addition, the new law also allows the court to consider the defendant's prior convictions as an aggravating factor based on a certified record of conviction. (§ 1170, subd. (b)(3).) Finally, Senate Bill No. 567's amendments to section 1170 added language requiring aggravating circumstances to be bifurcated from trial of the charges, and mandates that the jury "not be informed of the bifurcated allegations until there has been a conviction of a felony offense." (§ 1170, subd. (b)(2).)

Meanwhile, Assembly Bill No. 124 provided the opportunity for a low-term sentence under specified circumstances, including where a defendant was a "youth" as defined section 1016.7, subdivision (b) at the time of the offense and the defendant's youth was a contributing factor to the offense, unless the court finds that imposition of the low term would be contrary to the interests of justice.[4] (See § 1170, subd. (b)(6)(B); *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1095.) Section 1016.7, subdivision (b) defines "youth" as "any person under 26 years of age on the date the offense was committed."

---

[4]     Three bills amending section 1170—Senate Bill No. 567, Assembly Bill No. 124, and Assembly Bill No. 1540—were enacted and signed into law on the same date. (Stats. 2021, ch. 731, § 1.3 (Sen. Bill No. 567), eff. Jan. 1, 2022; Stats. 2021, ch. 695, § 5 (Assem. Bill No. 124), eff. Jan. 1, 2022; Stats. 2021, ch. 719, § 2 (Assem. Bill No. 1540), eff. Jan. 1, 2022.) Senate Bill No. 567 incorporated the amendments proposed by Assembly Bill Nos. 124 and 1540, and provided that if all three bills amending section 1170 were enacted and became effective on or before January 1, 2022, and Senate Bill No. 567 were enacted last, then section 1.3 of Senate Bill No. 567 would become operative. (Stats. 2021, ch. 731, § 3.)

At the time of his commission of the offenses in this case, Hilburn was five weeks shy of his twenty-fifth birthday.

Under section 1170, subdivision (b)(6), a trial court "shall order imposition of the lower term" when the person's youth "was a contributing factor in the commission of the offense," "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).)[5] Section 1170 also requires a court to state on the record the reasons for its sentencing choice at the time of sentencing. (*Id.*, subd. (c).)

The California Rules of Court, which provide guidance to courts in selecting between the terms, were also amended to conform to the new legislation. Rule 4.420 now provides, in relevant part:

> "(a) When a judgment of imprisonment is imposed, or the execution of a judgment of imprisonment is ordered suspended, the sentencing judge must, in their sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (b).
>
> "(b) The court may only choose an upper term when (1) there are circumstances in aggravation of the crime that justify the

---

[5] Section 1170, subdivision (b)(6) provides in full: "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense. [¶] (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking."

12

imposition of an upper term, and (2) the facts underlying those circumstances have been (i) stipulated to by the defendant, (ii) found true beyond a reasonable doubt at trial by a jury, or (iii) found true beyond a reasonable doubt by the judge in a court trial.

"(c) Notwithstanding paragraphs (a) and (b), the court may consider the fact of the defendant's prior convictions based on a certified record of conviction without it having been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial. This exception does not apply to the use of the record of a prior conviction in selecting the upper term of an enhancement.

"(d) In selecting between the middle and lower terms of imprisonment, the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision. The court may consider factors in aggravation and mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial. The relevant circumstances may be obtained from the case record, the probation officer's report, other reports and statements properly received, statements in aggravation or mitigation, and any evidence introduced at the sentencing hearing.

"(e) Notwithstanding section 1170(b)(1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice, the court must order imposition of the lower term if any of the following was a contributing factor in the commission of the offense:

"(1) The defendant has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence;

13

"(2)  The defendant is a youth, or was a youth as defined under section 1016.7(b) at the time of the commission of the offense; or

"(3)  Prior to the instant offense, or at the time of the commission of the offense, the defendant is or was a victim of intimate partner violence or human trafficking.

"(f) Paragraph (e) does not preclude the court from imposing the lower term even if there is no evidence of the circumstances listed in paragraph (e)."  (Cal. Rules of Court, rule 4.420, Revised January 1, 2022, re-lettered and amended effective March 14, 2022.)

B

*The Imposition of the Middle Term Under Section 1170, Subdivision (b)(6) Does Not Implicate Apprendi*

Hilburn asserts that under *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and its progeny, under new subdivision (b)(6) of section 1170, only a stipulation or a jury finding of aggravating factors is sufficient to support imposition of the middle term because he was a youthful offender at the time he committed the crimes.  The Attorney General responds that Hilburn has misinterpreted 1170, subdivision (b)(6), and asserts that *Apprendi* does not apply because the new provision "creates a post-verdict state law sentencing procedure that cannot increase punishment over and above what is authorized by the jury verdict."

In *Apprendi*, the United States Supreme Court held that "the Federal Constitution's jury trial guarantee proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant."  (*Cunningham, supra*, 549 U.S. at pp. 274–275.)  The high court later clarified in *Blakely v. Washington* (2004) 542 U.S. 296 (*Blakely*) that

14

"the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*. [Citations.] In other words, the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." (*Blakely*, at pp. 303–304, original italics.)

Prior to *Cunningham*, California's DSL assigned the trial judge with the authority to determine facts underlying aggravating circumstances that expose a defendant to an upper term sentence. The version of section 1170, subdivision (b) in existence before *Cunningham* provided, "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." (Stats. 1976, ch. 1139, § 273, pp. 5140–5141, as amended by Stats. 1977, ch. 165 § 15, pp. 647–649.) The court determined circumstances in aggravation or mitigation after consideration of the trial record; the probation officer's report; statements in aggravation or mitigation submitted by the parties, the victim or the victim's family; and any further evidence introduced at the sentencing hearing. (Stats. 1976, ch. 1139, § 273, pp. 5140–5141; see *Cunningham, supra*, 549 U.S. at p. 277, citing § 1170, former subd. (b).) The California Rules of Court also provided that "[c]ircumstances in aggravation" were to be "established by a preponderance of the evidence." (Cal. Rules of Court, former rule 4.420(b).)

*Cunningham* held that this sentencing scheme violated the Sixth Amendment's jury-trial guarantee as expressed in *Apprendi* and *Blakely* because it allowed a sentencing judge to impose a term beyond the statutory maximum based on facts neither admitted by the defendant nor proven to a jury beyond a reasonable doubt. (*Cunningham, supra*, 549 U.S. at p. 293.) The high court explained that the DSL directed the sentencing court to start

15

with a default middle term and to move from that term when the court itself finds facts—either related to the offense or the offender—beyond the elements of the charged offense. (*Id.* at p. 279.)

Applying *Apprendi* and *Blakely*, the *Cunningham* court concluded that the default middle term was the relevant statutory maximum and that the sentencing scheme did not "withstand measurement against [the court's] Sixth Amendment precedent." (*Cunningham, supra*, 549 U.S. at p. 293.) Under *Cunningham*, California could retain the DSL without encountering a Sixth Amendment violation by either (1) "calling upon the jury to find any fact necessary to the imposition of an elevated sentence" or (2) allowing judges to exercise " 'broad discretion … within a statutory range.' " (*Id.* at p. 273.)

In response to *Cunningham*, California elected the second option through emergency legislation, effective March 2007 (Stats. 2007, ch. 3, § 2). The Legislature amended the DSL to eliminate the presumptive middle term, leaving "the choice of the appropriate term" among each crime's sentencing triad to the "sound discretion of the court," solving the constitutional infirmity of the previous statutory scheme. (Stats. 2007, ch. 3, § 2.)

In 2022, the Legislature dramatically modified this regime by approving the amendments to section 1170 discussed in the preceding section. Under the changes effected by Senate Bill No. 567, the sentencing court's discretion is again restricted to the middle term unless sufficient findings are made in accordance with *Apprendi*. The amended law makes this explicit. Subdivision (b)(2) allows the high term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been

16

found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

As discussed, the additional changes made by Assembly Bill No. 124, for the three specified classes of offenders whose circumstance is a contributing factor to the offenses, create a presumption in favor of the lower term sentence. However, even if these additional factual findings are made, the court remains authorized to impose the middle term if the court determines that the aggravating and mitigating factors show that imposition of the lower term would be contrary to the interest of justice. (§ 1170, subd. (b)(6).)

Hilburn argues that Assembly Bill No. 124 modified the "statutory maximum" under *Apprendi* and *Blakely* to the low term for the categories of offenders set forth in new subdivision (b)(6). Further, he asserts that because he was under 26 years old at the time of the crimes, he fell within the bounds of section 1170, subdivision (b)(6)(B), and the court could not sentence him to the middle term without a stipulation or a jury finding on the aggravating circumstances.[6]

The Attorney General responds that the statutory language of section 1170, subdivision (b) shows the Legislature did not intend to remove the court's discretion to impose the middle term for the three "special" classes

---

[6]     At the sentencing hearing, the parties did not address whether Hilburn's youth contributed to the offenses. Without any discussion of the issue, the trial court stated it agreed "under 1170[, subdivision] (b)(6) that the Court shall order the low term, unless the Court finds that the aggravating circumstances outweigh those mitigating circumstances such that imposition of the lower term would be contrary to the interests of justice." The prosecutor did not challenge this finding. The statute is clear that youth (or one of the other two categories in subdivision (b)(6)) must be a contributing factor to the offense in order to qualify for a presumption low term.

17

of offenders set forth in subdivision (b)(6). Specifically, the People argue that the explicit statement in subdivision (b)(2) that an upper term sentence cannot be imposed without satisfying the constitutional requirements of *Apprendi* shows that if the Legislature intended to require findings for imposition of the middle term for subdivision (b)(6) offenders, it clearly knew how to do so. Additionally, the Attorney General contends imposition of the middle term under subdivision (b)(6) does not run afoul of the constitution's jury trial guarantee because the provision "creates a potential *reduced* term, as opposed to an *increased* term, for certain enumerated defendants based on judicial findings of eligibility and whether imposition of a low term sentence is in the interest of justice."

We agree with the Attorney General's interpretation of the new sentencing provision. First, the language and framework of the amended law makes clear the Legislature intended to maintain the sentencing court's discretion to impose the middle term even if it finds the defendant falls within one of the three categories of section 1170, subdivision (b)(6). As the Attorney General points out, if the Legislature wanted to limit the sentencing court's discretion, it knew how to do so as set forth in subdivisions (b)(1) and (2). (See *People v. Bautista-Castanon* (2023) 89 Cal.App.5th 922, 929 [holding section 1170, subdivision (b)(6) does not require aggravating circumstances to be proven to jury beyond a reasonable doubt and declining "to import [the subdivision (b)(1) and (2)] requirement into section 1170, subdivision (b)(6) as a prerequisite to imposing the middle term"].)

Second, the imposition of the low term becomes presumptive only after the sentencing court makes findings in addition to those supporting the jury's verdict. Under the amended statute, the low term is presumed only if the sentencing court first finds the defendant falls into one of the three special

18

categories set forth in section 1170, subdivision (b)(6) and, second, finds that circumstance was a contributing factor in the commission of the offense. Thus, unlike the middle term, the lower term is presumed only after the court makes additional findings beyond those of the jury. Because those findings occur after the defendant is convicted, and are not necessary for imposition of the presumptive middle term, they do not create a new statutory maximum sentence. Accordingly, the Attorney General correctly asserts that the new law does not implicate the concerns of *Apprendi*, which precludes only *increased* punishment based on facts not found by the jury. (See *Rita v. United States* (2007) 551 U.S. 338, 352 ["The Sixth Amendment question, the Court has said, is whether the law *forbids* a judge to increase a defendant's sentence *unless* the judge finds facts that the jury did not find (and the offender did not concede).]".) Stated another way, because the low term becomes presumptive only after additional factfinding by the judge, it does not constitute the "statutory maximum" for purposes of *Apprendi*.

To summarize, under section 1170, subdivision (b)(6), the sentencing court is tasked with assessing mitigating and aggravating factors to impose the middle term only if it first determines that the defendant qualifies for treatment under the provision—because he or she has either experienced certain trauma, is a youthful offender, or is the victim of intimate partner violence, and those circumstances contributed to the offense. We agree with the Attorney General that the Sixth Amendment does not constrain this statutory, post-verdict factfinding by the sentencing court. Accordingly, the trial court's determination that imposition of the lower term was contrary to the interests of justice did not run afoul of Hilburn's jury trial rights.

19

# III

### *The Trial Court Did Not Abuse Its Discretion*

Hilburn's final argument is that the trial court's imposition of the middle term was an abuse of discretion because the aggravating circumstances relied on by the court to impose the middle term "did not so outweigh the mitigating circumstances that the interests of justices required an elevated term." We disagree.

After a sufficient factual basis to support the circumstances in aggravation or mitigation is found, the court enjoys broad discretion in its sentencing determination. The trial court's sentencing decision is "review[ed] for abuse of discretion." (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) That "discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.' " (*Ibid.*) The court abuses "its discretion ... if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision." (*Ibid.*)

Hilburn has not shown the court abused its discretion. Rather, the record establishes the court carefully considered the relevant aggravating and mitigating circumstances. The court recognized that Hilburn's youth could qualify him for the recently amended law's presumptive low term, and found Hilburn's youth was the primary mitigating factor in the case. The court then appropriately determined that Hilburn's criminal history and the circumstances of the crime itself, particularly Hilburn's use of a firearm and the fact that the robbery occurred inside the victim's home, in the middle of the night, while the victim and the home's other occupants slept, warranted

the middle term.  This decision was an appropriate exercise of discretion by the trial court.

## DISPOSITION

The judgment of conviction is affirmed.


McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


DO, J.