Filed 2/25/26  P. v. Scott CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DERRICK ANTHONY SCOTT,<br><br>    Defendant and Appellant. | E085523<br><br>(Super.Ct.No. RIF103852-3)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Gary Polk and Joshlynn R. Pulliam, Judges.  Affirmed in part, dismissed in part.

William Paul Melcher, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Stephanie H. Chow, and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

1

In 2006, a jury convicted defendant and appellant Derrick Anthony Scott of attempted murder and other offenses arising from a drive-by shooting. The trial court denied his requests for resentencing under Penal Code sections 1172.1 and 1172.6.[1] We affirm the denial of his section 1172.6 petition because he is ineligible for relief. The denial of his request for resentencing under section 1172.1 is not an appealable order, so we dismiss that part of the appeal.

BACKGROUND

Scott was tried and convicted on three counts: (1) attempted murder (§§ 187, 664, count 1); (2) assault with a semiautomatic firearm (§ 245, subd. (b), count 2); and (3) discharge of a firearm from a motor vehicle (§ 12034, subd. (c), count 3). The jury found true alleged gang enhancements (§ 186.22, subd. (b)), allegations that race was a substantial motivating factor in committing the crimes (§ 422.75, subd. (c)), and allegations that a principal personally and intentionally discharged a firearm causing great bodily injury (§§ 12022.53, subds. (d), (e)(1)). The trial court sentenced Scott to 39 years 8 months to life.

On appeal, we affirmed Scott's convictions but ordered one of the hate crime enhancements stricken. (*People v. Ricketts* (Dec. 15, 2008, E040370) [nonpub. opn.].) The trial court modified Scott's sentence accordingly, reducing it to 38 years 8 months to life.

---

[1] Undesignated statutory references are to the Penal Code.

In 2019, Scott petitioned for resentencing under former section 1170.95, which is now section 1172.6. The trial court denied the petition. We affirmed that denial. (*People v. Scott* (Aug. 16, 2023, E074939) [nonpub. opn.] (*Scott II*).)

While Scott's direct appeal from the denial of his 2019 petition was pending, in March 2022, he filed a second section 1172.6 petition. In May 2024, the trial court denied that petition at the prima facie stage. We granted Scott's petition for writ of habeas corpus to establish the constructive timely filing of a notice of appeal from that ruling.

In December 2024, and again in January 2025, Scott requested resentencing per section 1172.1. The trial court denied both requests. The first rejection stated: "Denied – improper format." The second stated: "Denied, improper format 1172(c) PC." Scott's notice of appeal identifies the second of these denials as the order at issue here.

DISCUSSION

A. *Section 1172.6*

In *Scott II*, we found "Scott's jury was instructed that, to convict on attempted murder, it had to find the direct perpetrator 'harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being,' and that to aid and abet a crime, a person must act '[w]ith knowledge of the unlawful purpose of the perpetrator' and '[w]ith the intent or purpose of committing or encouraging or facilitating the commission of the crime.'" (*Scott II*, *supra*, E074939.) We held Scott was therefore ineligible for section 1172.6 resentencing because his "conviction of attempted murder

3

conclusively establishes that the jury found he personally acted with express malice or intent to kill, and did not apply any abrogated theory of vicarious liability." (*Ibid.*) Scott asks us to reevaluate that holding in light of our Supreme Court's opinion in *People v. Curiel* (2023) 15 Cal.5th 433 (*Curiel*), which was issued a few months after *Scott II*. We are not persuaded to change our conclusion about Scott's eligibility for section 1172.6 relief.[2]

Effective January 1, 2019, Senate Bill No. 1437 (Stats. 2018, ch. 1015) amended the state's murder statutes to curtail the use of two theories of vicarious liability for murder. These theories are grounded in situations where the defendant intended to commit some crime other than murder, yet a death resulted. The theories are known as felony murder and the natural and probable consequences doctrine. The same enactment also created a statutory procedure for convicted defendants to benefit retroactively from these changes to the law, initially codified at section 1170.95 but later renumbered as section 1172.6. This procedure allows eligible defendants to have convictions based on an abrogated theory of vicarious liability vacated and be resentenced. (§ 1172.6, subd. (a).)

---

[2] Because *Curiel* does not represent a significant change in the relevant law, it does not matter whether we frame our discussion as an application of the law of the case, or simply a reevaluation of the record in light of *Curiel*. (See *People v. Henderson* (2025) 110 Cal.App.5th 828, 843 ["Regardless of whether *Curiel* may be considered a significant change in the law, which is far from clear, it did not change the long-established law on direct aider and abettor liability"].) Either way would lead us to affirm the trial court's denial of Scott's petition.

"'If the petition and record in the case establish conclusively that the defendant is ineligible for [section 1172.6] relief, the trial court may dismiss the petition.'" (*Curiel*, *supra*, 15 Cal.5th at p. 450, quoting *People v. Strong* (2022) 13 Cal.5th 698, 708; see § 1172.6, subd. (c).) We presume "jurors understand and follow the instructions they are given." (*People v. Buenrostro* (2018) 6 Cal.5th 367, 431 (*Buenrostro*).) Our review of a trial court's decision on a section 1172.6 petition at the prima facie stage is de novo. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14.)

"It is well settled that [Senate Bill No. 1437] 'd[id] not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.'" (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252.) That remains true after *Curiel*. (*Curiel*, *supra*, 15 Cal.5th at p. 462 [direct aiding and abetting is a "valid theory" of murder liability].)

In *Curiel*, our Supreme Court held the jury's finding of intent to kill on a gang murder special circumstance did not establish conclusively that the defendant, who had been convicted of murder on a direct aiding and abetting theory, was ineligible for resentencing under section 1172.6: "Although intent to kill is certainly blameworthy, it is insufficient standing alone to render a person culpable for another's acts. The aider and abettor must know the direct perpetrator intends to commit the murder or life endangering act and intend to aid the direct perpetrator in its commission." (*Curiel*, *supra*, 15 Cal.5th at p. 468.) The *Curiel* jury's instructions on the natural and probable consequences doctrine allowed a murder conviction based on a finding that the defendant

5

"knew that [the direct perpetrator] intended to commit one of the underlying target offenses [disturbing the peace or carrying a concealed firearm by a gang member]" and that the defendant "intended to aid [the direct perpetrator] in *that* offense, *not murder.*" (*Ibid.*, second italics added.)

The instructions in this case differ in that they affirmatively demonstrate the jury did *not* rely on the natural and probable consequences doctrine in finding Scott guilty of attempted murder. The instructions did not authorize the jury to consider the natural and probable consequences doctrine as to attempted murder, charged in count 1, but only as to count 2, assault with a deadly weapon. That is, the instructions allowed the jury to rely on the natural and probable consequences doctrine to find the defendant guilty of assault if the jury found Scott committed attempted murder as an aider and abettor, but not the other way around.

Specifically, Scott's jury was instructed using CALJIC No. 3.02: "In order to find the defendant guilty of the crime of 245(b) PC as charged in Counts [sic] 02, you must be satisfied beyond a reasonable doubt that: [¶] 1. The crime of attempted 187 PC was committed; [¶] 2. That the defendant aided and abetted that crime; [¶] 3. That a co-principal in that crime committed the crime of attempted 187 PC; and [¶] 4. The crime of 245(b) PC was a natural and probable consequence of the commission of the crime of attempted 187 PC." A later paragraph of the same instruction repeats that the jury may treat assault as the natural and probable consequence of another target offense, not vice versa: "You are not required to unanimously agree as to which originally contemplated

6

crime the defendant aided and abetted, so long as you are satisfied beyond a reasonable doubt and unanimously agree that the defendant aided and abetted the commission of an identified and defined target crime and that the 245(b) PC was a natural and probable consequence of the commission of that target crime." The only "identified and defined target crime" in the instructions is attempted murder. Nowhere do the instructions allow the jury to consider the reverse, with aiding and abetting assault as a target offense and attempted murder as the natural and probable consequence.

Scott's argument in support of a different conclusion focuses on the preamble to CALJIC No. 3.02, which introduces the natural and probable consequences doctrine: "One who aids and abets another in the commission of a crime is not only guilty of that crime, but is also guilty of any other crime committed by a principal which is a natural and probable consequence of the crime originally aided and abetted." Scott proposes this language means "his conviction *could* have been based on the natural and probable consequences doctrine."

We disagree. We presume the jury read and understood the entire instruction, not just the language Scott emphasizes. (See *Buenrostro*, *supra*, 6 Cal.5th at p. 431.) The instruction, taken as a whole, expressly and repeatedly allows only one-way application of the natural and probable consequences doctrine, limited to the assault charge. Thus, the record refutes Scott's claim that his attempted murder conviction could have been based on an abrogated theory of vicarious liability, and the trial court properly denied the petition.

7

B. *Section 1172.1*

Scott attempts to appeal from the trial court's order declining his request for recall and resentencing under section 1172.1. He proposes that order is appealable under section 1237, subdivision (b), as a postjudgment order that affects his substantial rights. We agree with "the growing body of caselaw" rejecting that view. (*People v. Brinson* (2025) 112 Cal.App.5th 1040, 1045 (*Brinson*).)

"The right to appeal is statutory only, and a party may not appeal a trial court's judgment, order or ruling unless such is expressly made appealable by statute." (*People v. Loper* (2015) 60 Cal.4th 1155, 1159.)

"Section 1172.1 serves as a statutory exception to the general rule that a trial court lacks jurisdiction to modify a sentence after judgment is rendered and execution of the sentence has begun." (*Brinson*, *supra*, 112 Cal.App.5th at p. 1045.) Since amendments effective January 2024, "a court may recall a sentence and resentence a defendant on its own motion 'at any time if the applicable sentencing laws at the time of original sentencing are subsequently changed by new statutory authority or case law.'" (*Id.* at p. 1046; § 1172.1, subd. (a)(1).)

"Though the court can act on its own motion, defendants may not petition under section 1172.1. As the law states, a court, the Secretary of the Department of Corrections and Rehabilitation, the Board of Parole Hearings, a county correctional administrator, a district attorney, or the Attorney General may recommend or otherwise seek resentencing under section 1172.1. The statute makes express that the defendant has no right to

8

petition: 'A defendant is not entitled to file a petition seeking relief from the court under this section.' (§ 1172.1, subd. (c).) Further: 'If a defendant requests consideration for relief under this section, the court is not required to respond.' (§ 1172.1, subd. (c).)" (*People v. Faustinos* (2025) 109 Cal.App.5th 687, 695 (*Faustinos*).)

Courts have interpreted section 1172.1, subdivision (c) to mean that "defendants do not have a substantial right at stake when they request recall and resentencing," and thus no right to appeal the denial of such a request under section 1237, subdivision (b). (*Brinson*, *supra*, 112 Cal.App.5th at pp. 1046-1047.) "If the defendant has no right to a decision, the trial court's choice not to make one does not deprive the defendant of any right, much less a substantial one." (*People v. Hodge* (2024) 107 Cal.App.5th 985, 996.) A court's decision to issue an order affirmatively denying an unauthorized petition, rather than just ignoring it, does not change the analysis. (See *Faustinos*, *supra*, 109 Cal.App.5th at pp. 696-697.) Even if the court's explanation for why it is declining to act on a defendant's unauthorized section 1172.1 petition is erroneous, "we do not think that would convert a nonappealable order to an appealable one . . . because 'appealability depends upon the nature of the decision made, not the court's justification for its ruling.'" (*Faustinos*, *supra*, 109 Cal.App.5th at p. 698.)

Scott argues the recently enacted amendments to section 1171 require a different conclusion. Section 1171 now provides that, upon receiving "a request to begin a postconviction proceeding *that is authorized in law*," the trial court must follow certain procedures. (§ 1171, subd. (c)(1), italics added.) These procedures include considering

9

appointment of counsel for the defendant, issuing a decision stating its reasons for granting or denying the request, and advising the defendant of their right to appeal. (*Id.*, subd. (c)(1), (4) & (5).) Scott's view is that because "the record does not reflect the court complied with the provisions of section 1171 in denying [his] resentencing petition pursuant to section 1172.1," we should remand the case for compliance with section 1171, subdivision (c).

Not so. Although section 1171 generally applies to proceedings under section 1172.1, *Scott's* request to initiate such proceedings was *not* "authorized in law." (§ 1171, subd. (c)(1); see § 1172.1, subd. (c).) Moreover, section 1171, subdivision (c) specifies that it does not apply if it conflicts "with a more specific rule established in statute, in which case the more specific statute shall apply." Section 1171, subdivision (c)'s procedural requirements are in direct conflict with section 1172.1, subdivision (c), which specifies that "[i]f a defendant requests consideration for relief under this section, the court is not required to respond." We therefore "conclude section 1172.1, subdivision (c), not section 1171, subdivision (c), applies to defendant-initiated requests for recall and resentencing," and Scott's request that we remand for further proceedings under that statute is "unavailing." (*Brinson*, *supra*, 112 Cal.App.5th at p. 1049.)

A recent appellate opinion found an order declining to resentence a defendant under section 1172.1 appealable under different circumstances. In *People v. Olea* (2025) 115 Cal.App.5th 889, the trial court denied resentencing only after it acted on the defendant's unauthorized petition by taking "a number of procedural steps . . . including

appointment of counsel at [the defendant's] request, ordering the release of subpoenaed records from the CDCR to the defense, ordering the defense to provide copies of these records to the People, and setting a contested hearing on [the defendant's] request, at which [the defendant] appeared remotely." (*Olea*, at p. 901.) Because the trial court "effectively evaluated and denied [the defendant's] petition on the merits," the *Olea* court concluded the denial affected the defendant's substantial rights, and thus was appealable. (*Id.* at p. 902.) Here, in contrast, the trial court declined to consider Scott's petition by summarily denying it, without taking the extensive steps that comprised an effective denial on the merits in *Olea*. Thus, even assuming *Olea* is correctly decided—an issue we do not address—it is not a basis to conclude the denial of Scott's request for resentencing under section 1172.1 is appealable.

DISPOSITION

We affirm the denial of Scott's section 1172.6 petition. We dismiss Scott's appeal from the denial of his request for resentencing under section 1172.1.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAPHAEL
J.

We concur:

MILLER
     Acting P. J.

MENETREZ
     J.

11